## THULLEN v. TRIUMPH ELECTRIC CO.

(Circuit Court of Appeals, Third Circuit. December 3, 1915.)

### No. 1987.

1. EVIDENCE ⬅═398—PAROL EVIDENCE RULE.

   Where the negotiations concerning a contract of employment were reduced to writing in a letter dictated in plaintiff's presence and accepted by him, the letter is the best evidence of the agreement and cannot be varied by parol.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1766–1771; Dec. Dig. ⬅═398.]

2. MASTER AND SERVANT ⬅═8—CONTRACTS OF EMPLOYMENT—HIRING.

   Where the letters containing a contract of hiring fixed no express period of service, but merely declared that payments at a yearly rate should be made in monthly installments, the contract was one at will, and might be terminated during the year, without rendering the employer liable for the salary for that period.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 8–10, 17; Dec. Dig. ⬅═8.]

⬅═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action by L. H. Thullen against the Triumph Electric Company. There was a judgment for defendant, and plaintiff brings error. Affirmed.

See, also, 215 Fed. 939.

Furth, Singer & Bortin, of Philadelphia, Pa., for plaintiff in error. Harold B. Beitler, of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. At the trial below the court directed a verdict for the defendant, and the only question to be considered on this writ is whether the evidence required submission to the jury. The facts are as follows:

L. H. Thullen, an electrical engineer, was in the service of the electric company for 3 years and 5 months from December, 1909. In May, 1913, he was discharged, and is now suing for salary alleged to be due from the time of discharge until February, 1914. The original contract was made in November, 1909. The company had advertised for a chief engineer, Thullen had replied, several letters were exchanged, a personal interview followed, and finally the company wrote a letter on November 22d, which was accepted by Thullen, and was acted under by both parties for a year and a half. The parts of that letter now pertinent are as follows:

"Dear Sir:

"Confirming our conversation of Saturday, we will pay you a salary at the rate of four thousand ($4,000.00) dollars per annum as chief electrical engineer of this company, the duties to be those generally appertaining to such position as discussed in detail by us. * * *

"It is understood that the above shall go into effect as soon as you are ready to report here for duty, which we now understand will be Monday, Dec. 6th.

"It is the writer's hope in concluding this agreement that it will prove so mutually satisfactory as to mark the commencement of a long period of pleasant and profitable business association."

[1] At the trial, the only witnesses examined were Thullen and one of the company's officers, and both were allowed to testify to the conversation that preceded the letter. They differed in some particulars, but Thullen himself testified that the letter was dictated in his presence, was submitted to him, and was accepted as containing his idea of the discussion. We agree, therefore, with the trial judge that the letter is the best evidence of the agreement and is binding upon both. From December 6, 1909, when the plaintiff began his service, until July 1, 1911, he was paid "at the rate of four thousand ($4,000) dollars per annum."

On July 1st, following several conversations between the parties, a new arrangement about salary was made, and a second letter was written and accepted, which states:

"Confirming our conversation of a few days ago, we agree to make your salary *for the year 1911*, commencing Feb. 1, 1911, and ending Feb. 1, 1912,

five thousand ($5,000.00) dollars, payable in such equal monthly installments, commencing July 1st, as will equal the above amount at the end of the year.

"We further agree that at the end of the year (February, 1912), *provided you have remained in our employ that length of time*, to transfer to you ten shares of the common stock of this company.

"Commencing Feb. 1, 1912, we agree to make your salary *at the rate* of $6,000 per year, payable in equal monthly installments, and at the end of the year (Feb. 1, 1913) to transfer ten shares of the common stock of the company to you on the same condition as above."

Salary was paid in accordance with this letter, which may perhaps make a distinction (as will be observed from the words we have italicized) between the year 1911–12, and the year 1912–13. It is not necessary to dwell on the distinction, however, as no dispute arose until May, 1913. On February 20, 1912, a third letter was written to supplement the letter of July 1, 1911. The letter of November, 1909, contained several provisions about patents that are not now material, but were regarded as important by the parties. The letter of July 1 was silent about these provisions, and, lest this silence should be misconstrued, the third letter states:

"In response to your request please note that it is our understanding that our agreement with you of July 1, 1911, applies solely to the amount of compensation and the terms of payment; all other clauses of our agreement of November 22, 1909, remaining in effect.

"In other words, we have not canceled the original agreement, but have simply added a supplemental agreement covering compensation and terms of payment."

A few weeks later the company discharged the plaintiff for a reason it considered sufficient, paying him two weeks' salary in advance and three shares of stock. He sues for the balance of $6,000 from February, 1913, to February, 1914, as stated in the letter of July 1.

[2] The authorities show some difference of opinion concerning the method of stating the American rule that governs a contract of hiring for an indefinite period. The subject is discussed in Wood, Master and Servant (2d Ed.) § 136, and in the note to Warden v. Hinds, 25 L. R. A. (N. S.) 529. Numerous cases are collected also in 26 Cyc. at page 974, where we think the situation is accurately presented:

"In the United States a general or indefinite hiring is presumed to be a hiring at will, in the absence of evidence of custom or of facts and circumstances showing a contrary intention on the part of the parties. While it is generally held that the fact of a hiring at so much per day, week, month, quarter, or year raises no presumption that the hiring was for such a period, but only at the rate fixed for whatever time the party may serve, yet the rate and mode of payment are often determinative of the period of service, and in some cases it has been held that they raise a presumption as to the period of service."

The rule in Pennsylvania has been referred to in the very recent case of Hogle v. De Long Co., 248 Pa. 471, 94 Atl. 190:

"'In a contract of hiring, when no definite period is expressed, in the absence of facts and circumstances showing a different intention, the law will presume a hiring at will. The fact that the hiring is at so much per week, or month, or year, will raise no presumption that the hiring was for such period.' Weidman v. United Cigar Stores Co., 223 Pa. 160 [72 Atl. 377, 132 Am. St. Rep. 727]. This is a statement of a general rule, so widely recognized that this is said of it by Labatt in his work on Master and Servant, in section

160: 'A preponderance of American authority in favor of the doctrine that an indefinite hiring is presumptively a hiring at will is so great that it is now scarcely open to criticism.' "

Applying this rule to the record before us, we find that no period of service was expressly fixed (except perhaps for the year 1911–12, with which we are not concerned), but merely that payment was to be made at a yearly rate during an unspecified period, which the parties hoped in courteous phrase might be "a long period of pleasant and profitable business association." Presumptively, therefore, the hiring was at will, and the plaintiff was obliged to overcome the presumption by proving facts and circumstances from which the inference could safely be drawn that the real agreement of the parties was a hiring by the year. But this burden was not sustained. We have found nothing of substance in the record to contradict or to modify the letters already quoted, and the trial judge was therefore right in giving the instruction complained of.

The judgment is affirmed.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes