### TRIUMPH ELECTRIC CO. v. THULLEN.

#### (District Court, E. D. Pennsylvania. January 25, 1916.)

1. SPECIFIC PERFORMANCE ⟨⇒32—CONTRACTS ENFORCEABLE—MUTUALITY OF OBLIGATION.

   A contract of employment terminable at will provided that the employé should assign to the employer any patent or patent application for any invention, but that this did not apply to inventions not applicable to the line manufactured by the employer. After an application for a patent and before its issuance, the employer discharged the employé. *Held*, that specific performance of the agreement to assign would be denied on the ground that the contract being at will was so lacking in mutuality as to deny to one party the right to a decree for which the other party, from the nature of the contract, could not ask.

   [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 89–99; Dec. Dig. ⟨⇒32.]

2. SPECIFIC PERFORMANCE ⟨⇒1—CONTRACTS ENFORCEABLE—DOUBTFUL RIGHTS.

   The remedy of specific performance will be withheld until the chancellor is convinced that plaintiff has a clear right to the subject-matter of the contract.

   [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 1; Dec. Dig. ⟨⇒1.]

3. SPECIFIC PERFORMANCE ⟨⇒28—CONTRACTS ENFORCEABLE—CERTAINTY.

   To warrant specific performance, there must be a satisfying degree of certainty of what the thing is to which plaintiff has the claimed right.

   [Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 61–68; Dec. Dig. ⟨⇒28.]

---

⟨⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. SPECIFIC PERFORMANCE ☞25—CONTRACTS ENFORCEABLE—INTENTION OF PARTIES.

To warrant specific performance, it must appear that the claimed right was in the contemplation of the parties to the contract, and though the contract is so drawn that a court of law will construe it in plaintiff's favor and permit a recovery and damages for its breach, if it does not appear that defendant had in contemplation that he was contracting away what plaintiff claims, specific performance may be withheld, and plaintiff remitted to his right to recover damages.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 56–58, 60; Dec. Dig. ☞25.]

5. SPECIFIC PERFORMANCE ☞100—GROUNDS OF DENIAL—CHANGE IN SITUATION.

A contract of employment terminable at will, but which the parties contemplated should continue indefinitely, required the employé to assign to the employer inventions in the line of the manufacturing business conducted by the employer. *Held* that, where the employer discharged the employé, though it was justified in standing upon its legal rights, there was such a change in the situation of the parties, brought about by the employer's own act, as justified the denial of specific performance of the agreement to assign.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 305–310; Dec. Dig. ☞100.]

In Equity. Suit by the Triumph Electric Company against Louis H. Thullen. On trial hearing on bill, answer, and proofs. Bill dismissed.

See, also, 225 Fed. 293.

Edwards, Sager & Wooster, of New York City, for plaintiff.

Richard Eyre, of New York City, and Furth, Singer & Bortin, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This case is ruled by Marble Co. v. Ripley, 77 U. S. 339, 19 L. Ed. 955, upon the basis of the finding of this court, affirmed by the Circuit Court of Appeals in Thullen v. Triumph Electric Co., 227 Fed. 837, —— C. C. A. ——. We are asked to dispose of it, and sustain or dismiss the bill of complaint, according as it may be found that the plaintiff is or is not entitled to the specific relief prayed; the plaintiff having expressly waived its right in this suit to any other relief, or to have the cause transferred to the law side of the court.

There is no dispute of any merit over the main facts, and no necessity for any special findings as to them. Ignoring the other features of its business, the plaintiff is a manufacturer of electric motors. The defendant is an electrical engineer. The parties entered into a contract, evidenced by an exchange of letters. The only features of the contract with which we are now concerned are these:

The defendant was to enter the employ of the plaintiff, in charge of the engineering department of its plant, and if in the course of his employment he invented any design in the line of the manufacturing business conducted by plaintiff, for which letters patent were issued, the patent was to be the property of the plaintiff. The expense attending the invention and the grant of letters patent was to be met by the plaintiff. The defendant entered the employ of plaintiff in

pursuance of the contract. An order for a motor came from a customer of the plaintiff. This customer in its business operated saws. The material to be sawed was brought by a carriage contrivance up against the saw. The material varied in bulk. A condition of the operation was that, if the section through which the saw cut was small, the material was properly fed faster to the saw than when the section was large. The customer wished to have a motor supplied which would answer its needs. In working out this problem the defendant conceived the idea of wiring up the parts in such manner that the power which drove the saw and that which moved the carriage would be so correlated that the speed with which the material was fed to the saw would automatically be adjusted to the work put upon the saw. The result was a controller result.

As nearly as one not versed in the science of electrical engineering, nor familiar with its terminology, can grasp or express the controller idea involved in the invention, it is that of a controller system, as distinguished from a controller existing as a separate and individual unit. The defendant in his contract of employment had retained as his property anything of which he might be the inventor outside of the line manufactured by the plaintiff. Thinking the invention above referred to to be one the right to which belonged to him, he paid the plaintiff for the time and material expended in the experimental work of developing and testing the inventive idea, and at his own expense applied for and subsequently was granted letters patent covering the invention. Letters patent were applied for December, 1912, and issued August 19, 1913.

Another feature of the contract of employment was that the defendant was to receive a compensation based upon a yearly salary rate. The plaintiff construed the employment as one at will, and discharged defendant from its employ, paying him to a time between the date of the application for and the grant of the letters patent. The defendant brought his action for breach of contract on the theory that his employment was by the year. The court held the employment to be at will and rendered judgment for the defendant in that action which judgment was, on appeal, affirmed by the Circuit Court of Appeals. Thullen v. Triumph Electric Co., supra.

Subsequently the plaintiff in the present proceedings filed its bill of complaint. The sole question involved, as already stated, is the right of the plaintiff to the equitable remedy of a decree for specific performance of the contract to assign this patent. The language of the contract is as follows:

"In the event of any design being capable of being made the subject-matter of a patent application, such application and patent shall be assigned to the company, they paying the necessary attorney and patent-office fees."

"It is understood that this does not apply to any patentable design you [the defendant] may discover, not applicable to the line manufactured by this company [the plaintiff]."

The letters patent bear the number 1,070,638, and the invention is described in the application as relating—

"to systems for automatically controlling electric motors and has particular reference to the control of electrically driven feed carriages for friction or other saws."

[1] Upon the facts as stated the conclusion reached is that the plaintiff is not entitled to the equitable remedy prayed, and under the stipulation made at the argument the bill should be dismissed. This conclusion may, we think, be based upon the fact that the contract of employment of the defendant was at the will of plaintiff, and upon the equitable doctrine that a contract of this kind is so lacking in mutuality as to deny to one party the right to a decree for which the other party, from the nature of the contract, could not ask. Marble Co. v. Ripley, 77 U. S. (10 Wall.) 339, 19 L. Ed. 955. The subject is treated by text-writers under the head of the "Doctrine of the Mutuality of the Contract." There is some ground for the distinction recognized in some jurisdictions as affording an exception to the rule, which may be made in the case of an employer who has not terminated the contract until after he has himself so far performed as to have given the consideration for the right he asks to have enforced, but we are led to the same conclusion expressed by Judge Dallas in Brooklyn Baseball Club v. McGuire (C. C.) 116 Fed. 782, that the question is no longer an open one.

[2-5] Although these cases are decisive of the question involved, there are other considerations leading to the same conclusion. It is an equitable doctrine known as the certainty of the contract doctrine of universal acceptation that the remedy of specific performance will be withheld until the chancellor is convinced the plaintiff has the clear right to the subject-matter of the contract. The further doctrine is that there must be a satisfying degree of certainty of what the thing is to which the plaintiff has the claimed right, and that it was in the contemplation of the parties to the contract that he should have it. Not merely a plausible, but a forceful, argument has been addressed to us against the existence of even a legal right in the plaintiff. This is based upon the thought that the invention here pertained, not to motors which the plaintiff manufactured, but (for illustration) to saws which the customer used. The owner of such saws could order his motors of this plaintiff, or from any other manufacturer, and obtain the right to use this invention, without any possibility of the thought being presented that by so using it he was in any way encroaching on the field of manufacture occupied by the builder of the motor. If a manufacturer of motors, with a license to use (but not the right to vend) this invention, were to supply it to a customer, who operated saws, this customer would be an infringer.

Another consideration, already adverted to, is that it is not enough that the legal right is in the plaintiff and that he might be able to recover damages for a breach of the contract. It must appear that it was the intendment of the defendant that the plaintiff should have the right. When a contract is so drawn that a court of law will construe it in plaintiff's favor and permit a recovery in damages for its breach, and yet it does not appear that the defendant had in contemplation that he was contracting away what the plaintiff may at law successfully claim, this particular form of equitable remedy may be withheld, and the plaintiff be remitted to his right to recover damages. It is because of this it has been said that the breach by the defendant must have in it an element somewhat akin to the unconscionable. A broad contract

to assign any future invention which might be made the subject of a patent could not be said to confer in itself the absolute right to a decree for specific performance. Subsequent events may change the relations of the parties, and when this change has been brought about by the act of the plaintiff the court may properly have regard to these changes in exercising the power to award specific performance. The parties to this contract, at the time it was made, had in contemplation its indefinite continuance. The plaintiff specifically expressed its intention that the relations should last for years. It was justified in standing upon its legal rights, but cannot complain if it is held to them. Moreover, if the mutuality of remedy test is to be applied as of the date of the filing of the bill, plaintiff's right to this form of remedy would seem to be gone when it terminated the contract. Fry's Specific Performance, § 422 et seq.; Pomeroy Equitable Remedies, § 769.

Independently of the stipulation made by plaintiff, these considerations (except the one denying plaintiff to have any claim to the invention) would lead only to the conclusion of refusing a decree for specific performance. Equity, having taken jurisdiction of the case, might give other relief, as by proceeding to an award of damages, or the cause might be transferred to the law side of the court. Under the stipulation, however, the bill should be dismissed, with costs to defendant, and a decree to this effect may be submitted.

The former disposition made of the case was for the purpose of enabling plaintiff to ask for other relief. As this has now been expressly waived in this proceeding, and for the further reason that the former ruling was in part based upon a mistaken view of one feature of the facts, the opinion handed down is withdrawn. Special findings of certain minor facts and of the conclusions reached are submitted herewith.

### Trial Hearing on Bill, Answer, and Proofs.

### Findings of Fact.

(1) Payment for the labor employed and materials used in the experimental work of developing the defendant's invention was made in the bona fide belief on the part of the defendant that the invention did not relate to plaintiff's line of manufacture. Such payment was made, however, without the knowledge on the part of plaintiff that it related to the invention involved in this proceeding. As soon as knowledge of the invention came to the plaintiff, it was promptly claimed to be its property.

(2) The invention referred to was not in the contemplation of the defendant as one of the inventions which under the contract of the parties became the property of the plaintiff.

### Conclusions.

(1) The contract of employment between the parties was terminable at will.

(2) The plaintiff is not entitled to the relief of the awarding of the remedy of specific performance or to a decree that the letters patent be assigned to it by defendant.

(3) Under the stipulation made by plaintiff, the bill of complaint should be dismissed, with costs to defendant.