### TRIUMPH ELECTRIC CO. v. THULLEN.

(Circuit Court of Appeals, Third Circuit. July 10, 1916. Rehearing Denied August 17, 1916.)

#### No. 2088.

SPECIFIC PERFORMANCE ⟨⟶71—RIGHT TO REMEDY—CONSTRUCTION OF CONTRACT.

A contract by which defendant, an electrical engineer, was employed by complainant, a manufacturer of electrical appliances, and bound himself to assign to complainant any patentable inventions made by him during his employment, but expressly excepting any "not applicable to the line manufactured by this company," *held* not to so clearly apply to a patent for a system of motor control, which included as one of its elements a mechanical structure, not within complainant's line of manufacture, as to entitle complainant to enforce specific performance.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 204; Dec. Dig. ⟨⟶71.]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in equity by the Triumph Electric Company against Louis H. Thullen. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 228 Fed. 762. See, also, 227 Fed. 837, ——C. C. A. ——.

Clifton V. Edwards and Lawrence K. Sager, both of New York City, for appellant.

Richard Eyre, of New York City, for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The plaintiff asserts a right to an invention of the defendant for which Letters Patent No. 1,070,638 were granted, and prays that the defendant be decreed to assign the patent. The case involves a question of the plaintiff's right to the equitable remedy of specific performance. The District Court dismissed the bill, and the plaintiff took this appeal. The facts of the case are fully stated in the opinion of the trial court. 228 Fed. 762. We shall confine our statement to those matters which have principally influenced our decision on review.

The plaintiff was engaged in the manufacture and sale of electrical apparatus, and the defendant was employed as its chief electrical engineer, under a contract, the pertinent parts of which are the following:

---

⟨⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"It is mutually understood and agreed that you (the defendant) will devote your entire time and attention to the interests of this company, that, while in its employ, in the event of any design being capable of being made the subject-matter of a patent application, such application and patent shall be assigned to the company, they paying the necessary attorney and patent office fees.

"It is understood that this does not apply to any patentable design you may discover *not applicable to the line manufactured by this company.*"

The plaintiff terminated the contract by discharging the defendant, and there followed the litigation appearing in 227 Fed. 837, —— C. C. A. ——.

The electrical apparatus manufactured by the plaintiff during the period of the defendant's employment included dynamos or motors, starters and controllers, which were affixed to and used upon various types of machinery manufactured by other concerns, such as laundry, washing, dough mixing and elevator machinery. It was the defendant's task, as electrical engineer, to design such electrical apparatus and conform it to the requirements of the machines. In the course of its business the plaintiff was asked by a manufacturer of friction saws to supply a motor for a saw of its make. The motor which was made to fill this order was designed by the defendant with especial regard to ruggedness and strength to meet the exacting demands of a machine of that type. In the course of designing this motor the tests upon the saw developed peculiar difficulties due to irregularity of the load, with respect to which the defendant conceived a novel idea.

The friction saw was used for cutting steel of various degrees of hardness and of different sizes and shapes. The saw was revolved by a motor and the steel was brought against the saw on a movable carriage controlled by the operator. The different qualities of the metal and the changing dimensions of the structure to be cut threw an irregular load upon the saw and produced unsatisfactory results. The plaintiff met its customers' requirements by supplying a motor for the saw and later a motor for the carriage, specially designed with respect to power to do the work of that particular machine. The defendant afterward developed his idea. His conception was not a saw mechanism operated by one or more motors attached to it, but was a unitary mechanism consisting of two operative parts, one the saw and the other motors. It contemplated two motors. A large one was employed to drive the saw and a small one to drive the work toward the saw or the saw toward the work, the two motors being so connected, and the smaller motor being so constructed that its speed would vary inversely as the load of the larger motor increased or decreased, thereby keeping the load approximately constant. This involved the construction of a saw proper and a system of motor control. For this invention the defendant applied for and received the patent in suit, entitled "Control System for Electric Motors." The question is whether the invention of the patent is "applicable to the line manufactured" by the plaintiff. If it is, the plaintiff is entitled to an assignment of the patent under a decree for specific performance, unless, indeed, that remedy is denied it for lack of mutuality in the contract. Marble Co. v. Ripley, 77 U. S. (10 Wall.) 339, 19 L. Ed. 955; Triumph Elec-

tric Co. v. Thullen (D. C.) 228 Fed. 762, 765. If it is not applicable to the plaintiff's line of manufacture, then the invention comes within the exception of the contract and belongs to the defendant.

The patent contains eighteen claims. All refer intimately or remotely to the same conception and are drafted with the customary regard to broad and narrow constructions. As the one purpose of this action is to compel the defendant to specifically perform his contract by assigning the patent, we are not concerned with the validity of the patent or the scope of its claims. Nor is the question of the shop rights of the plaintiff to manufacture the patented device involved. We are required only to ascertain the precise character of the patented invention and then determine whether that invention comes within the scope or the line of the plaintiff's manufacture.

The invention disclosed by each claim comprises a combination of elements with varying particularity. Four claims relate specifically to a "saw" electrically controlled. In these claims a saw is a distinct element of the combination. In five claims a "carriage" is substituted for a saw, and these claims are thus broadened to any mechanism employing generally a motor driven carriage. In three claims the limitation of a carriage is broadened by describing this element as a "device", and by the remaining claims a further attempt is made to broaden or generalize this element (which appears in each of the eighteen claims in some shape or other) by the word "resistance" and by the expression "means for varying the load" on the motor, etc.

The invention of the patent is illustrated by an electrically operated and electrically controlled friction saw. The elements of this device, as they appear in certain of the claims, are,

(1) A saw;

(2) Means for rotating the same (large motor);

(3) A carriage to bring the saw and material to be sawed into co-operative relation.

(4) An electric motor for driving the carriage (small motor);

(5) Means for maintaining the pressure between the saw and the material at a substantially constant value (connection between the motors and between the motors and the saw mechanism).

This is a combination structure based upon combination claims. It consists primarily of two things, a saw mechanism and a controller mechanism. These two mechanisms are joined in their construction and are inseparably related in their operation. The saw without the controller is inoperative in the sense intended by the patent. The controller without the saw performs no function as it has no mechanism to control. Neither mechanism is separately operated and neither alone is within the claims we are now considering. The two form the device of the invention, and when together, they operate in such a related and compensating way that the presence of one is necessary to the operation of the other, and the co-operation of the two is essential to the result desired. Now, the manufacture of saws, either singly or in connection with controllers, was admittedly never within the line of the plaintiff's business, and the plaintiff, by its contract, is only entitled to an assignment of an invention that is in the

line of its manufacture. It is therefore clearly not entitled to that part of the defendant's invention which consists of a saw. If in any aspect it is entitled to the other part, that part is not assignable because it is not separable. Therefore, under the claims we are considering we believe the plaintiff is not entitled to an assignment at all.

This reasoning is equally applicable to those claims in which the element of a carriage or the element of a device is substituted for that of a saw, for it nowhere appears in the testimony that the plaintiff was engaged during the life of the contract in the manufacture of a composite unitary structure embodying a carriage or device operated by a system of motor control.

The remaining claims of the patent refer less specifically to the element which in the others consists of a saw, a carriage or a device, and disclose in the broadest possible way a system of motor control in connection with an element which is termed "resistance" or "means for varying the load" on the motor. If these claims can be construed to disclose a system of motor control separate from and in no way connected with other mechanism upon which the control is intended to be exerted, then we approach a ground between the contending parties over which the conflict has been vigorously waged. The basis of the plaintiff's claim is that it manufactured "electric controllers" and that such controllers, within a proper definition, embrace any system of motor control. The defendant admits that the plaintiff manufactured an electric controller, but maintains that in electricity there is a distinction between an electric controller implement and a system of electrical control. This matter is debatable, and, as usual, is greatly confused by the opposing opinions of those learned in the science.

At this point the issue becomes one entirely of fact. Without reciting the facts, or repeating the opinions of experts, it is sufficient to say, that, after a very careful study of the testimony, we are inclined to believe there is substance in the distinction made by the defendant between a system of motor control and an electrical controller. At all events, there is doubt that at the time the contract was in force the plaintiff was engaged in the manufacture or installation of controller systems, and it is evident that the plaintiff has not proved with that certainty which is required to invoke the equitable remedy of specific performance, that the invention of the defendant is in the line of its manufacture. We are therefore of opinion that in dismissing the bill upon this ground, the District Court committed no error.

The decree below is affirmed.