### GOODYEAR TIRE & RUBBER CO. of AKRON, OHIO, v. MILLER.

(District Court, S. D. California, S. D. September 21, 1926.)

1. **Master and servant** ☞62—Invention made by employee, employed generally for stated compensation does not belong to employer unless by express contract.

In the absence of an express agreement therefor, an invention made by an employee employed generally for a stated compensation, does not belong to the employer.

2. **Specific performance** ☞8—Rests in sound judicial discretion of court to be exercised in accordance with equitable principles.

Specific enforcement of a contract rests in the sound judicial discretion of the court, to be exercised in accordance with established principles of equity with reference to the facts of the particular case.

3. **Specific performance** ☞32(1).

To entitle one party to a contract of employment to a decree for specific performance, the contract must be mutually enforceable.

4. **Specific performance** ☞50—Employer held not entitled to specific performance of agreement to assign invention which was wanting in consideration and fairness and certainty.

Agreement signed by employee without consideration subsequent to employment on monthly salary terminable at will, whereby he agreed to assign to employer all inventions made during time of employment or within one year thereafter relating to employer's business, *held* too uncertain, unilateral, and wanting in fairness and justice to be specifically enforceable with respect to valuable invention.

In Equity. Suit by the Goodyear Tire & Rubber Company of Akron, Ohio, against Grover C. Miller. Decree for defendant.

O'Melveny, Millikin, Tuller & Macniel, of Los Angeles, Cal., for plaintiff.

Robert Brennan, Richard Hartley, and W. B. Thomas, all of Los Angeles, Cal., for defendant.

### Conclusions of the Court.

McCORMICK, District Judge. This is a suit in equity wherein plaintiff seeks to have this court decree the specific performance of a written agreement signed by the defendant while in the employ of plaintiff in its tire factory at Akron, Ohio, by requiring the defendant to surrender and transfer to plaintiff all and every interest in a certain valuable invention which defendant conceived and produced while employed by plaintiff. The plaintiff also asks that the defendant be enjoined from assigning, transferring, or using the invention. The agreement is as follows:

"Agreement Between the Goodyear Tire & Rubber Company and G. C. Miller.

"In consideration of my employment and the salary to be paid for my services during the term of my employment with the Goodyear Tire & Rubber Company, I hereby agree, covenant and contract with the Goodyear Tire & Rubber Company as follows:

"1. I agree to disclose to the factory manager of the Goodyear Tire & Rubber Company any and all improvements and inventions which I may make solely, or which I may make jointly or commonly with others, either during the term of my employment with the Goodyear Tire & Rubber Company or within a period of one year from the termination of my employment, in respect either to:

"(1) Methods, processes, or apparatus concerned with the production of any character of goods or materials sold or used by the Goodyear Tire & Rubber Company, or;

"(2) In respect to any character of goods or materials · sold or used by the Goodyear Tire & Rubber Company.

"2. I also agree to assign, transfer and set over unto the Goodyear Tire & Rubber Company my entire right, title and interest in and to any and all of such inventions as specified in paragraph 1 hereof, and in and to any and all applications for letters patent which may be filed on such inventions and in and to all letters patent which may issue upon such applications.

"3. I also agree to sign all instruments necessary for the filing and prosecution of any applications for letters patent, of the United States or any foreign country, which the Goodyear Tire & Rubber Company may desire to file upon such inventions as are specified in paragraph 1 hereof, to sign all instruments necessary for filing and prosecution of any divisional applications which may be required upon such aforesaid applications for letters patent, to sign all instruments necessary for reviving or renewing any of such aforesaid applications for letters patent, in case revival or renewal of these applications hereafter becomes necessary, and to sign all instruments necessary to the filing and prosecution of any continued applications or reissue applications which may hereafter appear to be necessary to render such inventions as are mentioned in paragraph 1 effective and of full force for the purpose of the Goodyear Tire & Rubber Company.

"Signed this 17th day of August, 1921.

"[Signed] Grover C. Miller,

"B. W. Litchfield,

"Vice President and Factory Manager.

"Witnesses:

"R. W. Snyder.

"E. J. Thomas."

Defendant entered plaintiff's employ originally in August, 1919, as a checker of tire-making machines in its Akron factory. His duty was to ascertain whether a designed machine could be mechanically assembled and successfully operated in the production of rubber tires by plaintiff. His employment was general, to do such work for the company as plaintiff should assign to him in the machine design department of the factory. He was not employed at that time or at any other time to invent or improve any particular or specific device or machine. His salary at the beginning was $250 per month, but after a short time it was increased to $275 per month. In November, 1919, he was transferred to a department called the technical service department, where the mechanical difficulties that arose in the production department of the factory were examined, considered, and overcome. He continued to work for the plaintiff company in such capacity until December, 1920, when he was "laid off" because the department was discontinued and the company had no further need for his services. He again obtained employment with plaintiff in April, 1921, as a tube racker or tester. This work was of a different character than his earlier services as it did not involve technical or engineering skill. The compensation for such labor was at the rate of 45 cents per hour. About July 22, 1921, Miller was transferred again into the machine design department without any formalities or negotiations other than a general oral direction by plaintiff to work therein at a salary of $200 per month. His employment was substantially the same as when he had been formerly employed therein, and he continued to perform substantially the same service as he had in the previous employment in that department. In April, 1923, his salary was increased to $225 per month, and he continued to receive such amount and no more for his services until he voluntarily left the plaintiff's employ in July, 1923. The salary paid to Miller after he had invented and produced the machine, which has proven of great pecuniary value to plaintiff, was $50 per month less than he had received prior to the invention for the same service.

About a month after Miller went back into the machine design department, and on August 17, 1921, while he was at work, an unidentified employee of plaintiff presented the written agreement sued on to Miller and stated that the company wished him to sign it. Miller asked the employee why the written agreement was desired, and was told by the employee that it was merely a form required in order to give the plaintiff an option to acquire any improvement or invention which defendant might make and which might prove of value to plaintiff in its business and thereupon Miller signed the agreement. There were no other conversations or dealings between the plaintiff company and Miller concerning the writing or its terms, either at the time he entered the service of the company or at any other time during his service therein. His monthly salary of $200 and his employment with the plaintiff had been previously arranged and agreed upon, and he had been working for the plaintiff company in the machine design department for some time before any written agreement of any kind was suggested or required.

In March, 1923, while defendant was employed in the machine design department of plaintiff, he conceived and commenced the de-

signing of a tire lining machine which he subsequently produced and which since July, 1923, has been used in plaintiff's factories with great financial and mechanical success. The machine is one for treating tire casings and is known as a "Straight Side Passenger Tire Lining Machine." It is a device having a chuck that operates by centrifugal force which saves time in the treatment of rubber tire casings during the process of manufacture. It is a distinct and valuable contribution in rubber tire manufacture and is admittedly the product of defendant's inventive faculties. The machine has saved to the plaintiff 1 cent per tire in the cost of tire production, which in the factories operated by plaintiff has resulted in a saving of at least $150 per day.

The idea to design and endeavor to produce the specific machine in question originated entirely with Miller. He communicated this idea to his superiors in plaintiff's factory and requested permission to work it out. He was authorized by the plaintiff to do so with the result heretofore stated. As previously stated Miller was at no time specially engaged or employed to work on or to produce this particular machine or any specific machines or improvements, and therefore the rule announced by the Supreme Court of the United States in Standard Parts Co. v. Peck, 264 U. S. 52, 44 S. Ct. 239, 68 L. Ed. 560, 32 A. L. R. 1033, has no application here.

Defendant was not advised of plaintiff's claim to his invention at any time during his employment, and not until March 30, 1925, nearly two years after he left plaintiff's employ, was any demand or claim made upon him by plaintiff. At that time the company demanded that Miller sign a petition for letters patent covering the invention, and also that he assign to the plaintiff all right, title, and interest in the invention, offering the defendant therefor the sum of $1. Miller refused the demand and offer, and this suit followed.

[1] Since this action was commenced, pursuant to a stipulation between the parties hereto, Miller has filed a patent application for the patenting of his invention, and plaintiff has agreed to advance as a loan to defendant the patent fees and costs up to $500 in order that the patent right to such invention may be kept alive for the benefit of whomever shall be decreed entitled thereto. Defendant has at no time objected to the use of his invention by the plaintiff company in its factories, and by his amended answer Miller has tendered a shop right or license to use the machine in plaintiff's factories without the payment of royalties. It is contended by counsel for plaintiff that under the terms of Miller's employment even in the absence of the written contract therefor the absolute ownership of Miller's invention belongs to his employer, the plaintiff company. Such in my opinion is not the law. In Dalzell v. Dueber Mfg. Co., 149 U. S. 315, 13 S. Ct. 886, 37 L. Ed. 749, the Supreme Court says:

"But a manufacturing corporation, which has employed a skilled workman, for a stated compensation, to take charge of its works, and to devote his time and services to devising and making improvements in articles there manufactured, is not entitled to a conveyance of patents obtained for inventions made by him while so employed, in the absence of express agreement to that effect."

To the same effect is Hapgood v. Hewitt, 119 U. S. 226, 7 S. Ct. 193, 30 L. Ed. 369. There is nothing in Solomons v. United States, 137 U. S. 342, 11 S. Ct. 88, 34 L. Ed. 667, which decides otherwise. It is true there is language in the opinion of Mr. Justice Brewer in the Solomons Case which when isolated from its context supports plaintiff's contention in the case at bar, but such language is not in line with the Supreme Court's conclusion in the Solomons Case which merely recognizes a shop right in the employer to use an invention of an employee without the payment of royalties.

It is clear then that if plaintiff is entitled to the absolute and exclusive ownership of Miller's invention it is because of the written contract of August 17, 1921.

[2] The enforcement of a contract by a decree for its specific performance rests in the sound discretion of the court—a judicial discretion to be exercised in accordance with established principles of equity with reference to the facts of the particular case. A contract may be valid in law and not subject to cancellation in equity, and yet the terms thereof, the attendant circumstances, and even in some cases the subsequent events, may be such as to require the court to deny its specific performance. See Marks v. Gates (9th C. C. A.) 154 F. 482, 83 C. C. A. 321, 14 L. R. A. (N. S.) 317, 12 Ann. Cas. 120.

A continuing contract will not be enforced specifically if it is one which by its terms plaintiff is permitted to terminate at will. 36 Cyc. 631. And the Supreme Court of California, in Sturgis v. Galindo, 59 Cal. 28, 43 Am. Rep. 239, speaking through Justice Erskine Ross, then a Justice of that court, in considering cases wherein specific performance of a contract is asked, said:

"Unless the court is satisfied  *  *  *

that the contract is fair and just, and equal in all its parts, and founded on an adequate consideration, it will not, by the interposition of its extraordinary power, order it to be executed. If an agreement be deficient in either fairness, justice, or certainty, its specific execution will not be decreed."

[3] And in addition to the elements of fairness, justice, and certainty, agreements of employment such as the one involved in this suit must be mutual before the power of the court to order their specific performance can be successfully invoked. Mutuality of enforceability is just as necessary in specific performance as capacity of parties, adequacy of consideration, or certainty of terms. It is a general principle that when from personal incapacity, the nature of the contract, or any other cause, a contract is incapable of being enforced against one party, that party is equally incapable of enforcing it specifically against the other, though its execution in the latter way, in itself, be free from difficulty attending its execution in the former. See Fry on Specific Performance, § 286, and Rutland Marble Co. v. Ripley, 10 Wall. 339, 19 L. Ed. 955.

Upon a review of the authorities and on principle it seems to be generally established that where a contract of employment authorizes the employer at his option to dispense with the services of the employee, specific performance will not be enforced at the suit of the employer, and also that to warrant specific performance of a contract of employment it must appear that the claimed right was in the contemplation of the parties to the contract when it was made, and, though the contract is so drawn that a court of law will construe it in the employer's favor and permit a recovery of damages for its breach, if it does not appear that the employee had in contemplation that he was contracting away what the employer claims, specific performance may be withheld and the employer remitted to his right to recover damages. Triumph Electric Co. v. Thullen (D. C.) 228 F. 762; Brooklyn Baseball Club v. McGuire (C. C.) 116 F. 782; Kenyon v. Weissberg (D. C.) 240 F. 536.

[4] Applying the foregoing rules to the contract in this case, and the facts and events attendant to its execution as shown by the evidence, specific performance cannot be decreed here. Miller was not employed under the alleged agreement, and neither it nor its terms were in any way presented or made known to him for months after he entered the employ of the company and for weeks after he was in the particular department wherein he produced the machine in controversy. Moreover, there is nothing in the contract that requires Miller to exercise his inventive faculties or to perform any specific or other work for the plaintiff, and there is no provision of any kind in the agreement for the payment of any salary to Miller or no agreement to employ him for any length of time whatever. Under the agreement and without redress he could have been discharged without cause at any time. The contract is unilateral in the truest sense. It binds the employer to do nothing, but expressly requires the employee to disclose to the employer any improvements and inventions which the employee may make, solely or conjointly with others, and to assign all interest in any patents of such inventions, not only during the term of his employment by plaintiff, but within the period of a year after the termination of his employment with plaintiff.

It is inconceivable that defendant at the time he signed the document of August 17, 1921, contemplated divesting himself absolutely of an invention of such immeasurable value as the one involved in this case in consideration of a continuance of employment which he already had at a salary already fixed, and it is doubtful whether the plaintiff company at the time it caused such document to be presented to Miller for his signature had in contemplation the acquisition of such a valuable property right as that sought by it in this suit. There is certainly nothing in the writing or the evidence that warrants such conclusion. I am strongly persuaded to believe that the situation of the parties at the time Miller signed the agreement was substantially as he testified in this case, that all that was intended was that Miller was required to sign the agreement in order that his employer might have the first right or option to purchase and acquire absolutely any mechanical improvements or inventions which Miller might produce which would be of value to the plaintiff in its business. But be that as it may, the contract itself is so vague, uncertain, indefinite, unequal, unilateral, and deficient in fairness and justice as to require that its specific performance be denied.

Cases cited by plaintiff's counsel, of which Standard Parts Co. v. Peck, supra, is an exemplar, are in my opinion not analogous to the case at bar. In all of such cases the contract of employment was to do a particular thing and contained an agreement to pay a designated compensation or bonus and in many instances to pay an additional compensation of a percentage of the savings produced by the employee as well as an express agreement on the part of the employer to employ the employee for a stated period. There

are no such engagements on the part of the plaintiff company in the agreement of August 17, 1921.

The bill will be dismissed, with costs, conditionally however, upon defendant filing a relinquishment of shop rights as to the machine in suit for use by plaintiff company in any of its factories. Solicitors for defendant will prepare an appropriate decree under the rules of this court.