CONSOLIDATED RAILWAY ELECTRIC LIGHTING AND EQUIPMENT COMPANY

*v.*

UNITED STATES LIGHT AND HEATING COMPANY et al.

[*Decided August 1st, 1910.*]

1. Upon a bill for reforming and enforcing the specific performance of an agreement for the assignment of patents comprising existing and future inventions, filed by the assignee of the original purchaser against one of the original vendors, and also the assignee of this vendor or assignor, which was demurred to generally for want of equity, and specially because the contract as sought to be reformed should not be enforced because it is void as against public policy and inequitable as being too general and unrestricted, the question in a court of equity comes finally to the issue, whether on the entire facts admitted or proved, the contract for the assignment of future inventions goes no further than a restraint fairly and reasonably necessary for the protection of the assignee, under all the circumstances of the case.

2. Where the bill, as in this case, shows the payment to the original vendors of the sum of $1,995,000 for the inventions existing and future, the receipt of this sum as the consideration being admitted by the demurrer, it cannot as a matter of law, and in the absence of any qualifying facts, be said that an agreement for the transfer of future inventions of the same character, based on the immediate payment to an inventor of such an enormous consideration, is, on the face of it, illegal.

On demurrer to amended bill.

*Messrs. Collins & Corbin* and *Mr. Charles Green Smith* (of the New York bar), for the demurrants.

*Messrs. Lindabury, Depue & Faulks,* for the complainants.

EMERY, V. C.

The general object of this bill is the specific performance of an agreement for the assignment of patents or inventions, and it is filed by the assignee of the original purchaser against one

of the original vendors, and also the assignee of this vendor or assignor. The agreement in writing (a copy of which is annexed to the amended bill) is dated July 31st, 1894, and by it Morris Moskowitz, Leon D. Adler and Abraham S. Adler, as the owners of certain inventions and improvements, for some of which patents had been allowed, after reciting that the National Electric Car Lighting Company had purchased from them all the right they had to these inventions and improvements, patents on which they have applied for, or might thereafter apply for, and had paid to them the sum of $1,995,000, assigned to the National, &c., company in consideration of the payment of this sum, all their title and interest in the said inventions and improvements, as well as to "all improvements and inventions made or to be made by them or either of them." This agreement or assignment is general and covers all inventions of whatever character. On the hearing upon the original bill, it was held unenforceable in equity according to its terms, on the ground that such general agreement was void, but on the evidence produced as to the circumstances of making the agreement, leave was given to apply to amend the bill for the purpose of reforming the contract so as to limit the improvements and inventions to improvements, and inventions for the special subjects of electric car lighting purposes, made by the grantors, or either of them, and letters patent issued thereon. The bill thus amended alleges (paragraph 4) that Moskowitz and the Adlers proposed (among other things) to assign to the National company, in consideration of the sum of $1,995,000, all "the right to all further improvements and inventions for electric car lighting purposes made or to be made by them, or either of them;" that this proposal was accepted by the National company, and that in pursuance thereof, the contract in question was drawn, but that by inadvertence, accident and mistake the contract as written did not conform to the proposal and acceptance, in that there was omitted the qualifying or limiting clause before the *habendum,* "for electric car lighting purposes and the letters patent issued or to be issued thereon," and the contract as actually made was, with respect to future improvements, broader than the parties agreed to or had intended. It further appears by the amended

bill that the payment by the National company of the consideration mentioned in the assignment (the sum of $1,995,000) was made and received by the grantors; that the written contract was recorded, and that, subsequently, Moskowitz, in recognition of the obligations of the agreement, assigned sixteen inventions for electric car lighting purposes, and the applications therefor, in which letters patent were subsequently obtained, of various dates between July 9th, 1895, and October 24th, 1899, and in accordance with these assignments the letters patent were issued to the National company; that on October 14th, 1899, the National company assigned to another company, the Electric Axle Light and Power Company, its title to these letters patent and its whole right, title and interest

"in and to any and all improvements and inventions for electric car lighting purposes to which it was or might be entitled under contract with any of its employes or otherwise,"

and that after this assignment, of which Moskowitz and the Adlers had notice, and in recognition of his obligations under the contract of July 31st, 1894, Moskowitz, on March 18th, 1900, assigned to the Electric Axle company three other letters patent for electric car lighting purposes, and on December 20th, 1899, Moskowitz and the Adlers, together with another person, assigned to the Electric Axle company another patent of like character; that on August 29th, 1904, the Electric Axle company assigned to the complainant, the Consolidated Railway Electric Lighting and Equipment Company,

"its entire right, title and interest to applications and letters patent to which it was then or might thereafter be entitled under the contract of July 31st, 1894, and the assignment of October 14th, 1899."

The bill then charges that after the agreement of July 31st, 1894, the defendant Moskowitz made certain improvements and inventions for electric car lighting purposes, and also certain improvements in the inventions transferred under the contract of July 31st, 1894, and filed applications for patents, on which twelve letters patent were subsequently issued between September 10th, 1901, and August 23d, 1904. Four of the letters

288 CASES IN CHANCERY.

Consolidated Ry. Elec. L. & E. Co. *v.* U. S. L. & H. Co. *77 Eq.*

patent were issued directly to the defendant company, the United States Light and Heating Company, upon assignments made pending applications for patents, and the remaining eight, for which letters patent were issued to one James H. Young, as trustee, were subsequently assigned by Young as trustee to the defendant company. Young is alleged to have received letters patent and to have made the assignment as trustee for Moskowitz.

The bill further alleges that Young had notice of the agreement of July 31st, 1894, of Moskowitz with the National company, and acquired the inventions and improvements and applications from Moskowitz without paying value therefor, and that the defendant company when it acquired title from Moskowitz and Young, trustee, also had notice of the agreement, and that it acquired this title without paying value therefor and with full notice and knowledge of the right of the National company and its assigns to the said inventions and improvements as set forth in the bill.

The demurrer filed to the amended bill by the United States company and Moskowitz, besides the general allegations of want of equity, specially sets up that the contract as sought to be reformed should not be enforced because it is void as against public policy and inequitable as being too general and unrestricted.

On the original hearing I held that a general assignment or agreement to assign all improvements or inventions to be made, without restriction as to time or character, was not only against public policy, but was not recognized by the patent laws of the United States, which were the only basis of any assignable right. *U. S. Rev. Stat.* § *4898; Walk. Pat. (4th ed.)* § *274,* and cases cited. Defendants claim that the agreement, although limited to future inventions for electric car lighting purposes, is equally void as against public policy, and is on the face of it unenforceable in equity as coming within the class of contracts described by Mr. Justice Bradley, in *Aspinwall Manufacturing Co.* v. *Gill (1887), 32 Fed. Rep. 697,* as naked assignments or agreements to assign in gross a man's future labors, as an author or inventor, in other words, a mortgage on a man's brain to bind all

its future products. Such a contract, he said, does not address itself favorably to the consideration of the court. In this case an assignment of letters patent for a machine, "together with all improvements I may hereafter make," for the sum of $12,000, was sustained as an equitable assignment of an improved machine subsequently patented to another, and the contract (at *p. 701*) was said to be one which the vendor had the right to make and was willing to make and by which he was bound.

In *Printing, &c., Co.* v. *Sampson (1875), 19 L. R. Eq. Cas. 462,* the purchasers of a patent, who were about to form a company for the purpose of using a patented invention, paid the vendors a large sum in shares for assignments of the patents and all future patents which the vendors might acquire "with respect to the inventions or any of them or any of a like nature." This contract was sustained, and in answer to the objection that such an agreement to assign future patents was against public policy, as tending to discourage inventions, Sir George Jessel said, substantially: "In such cases, there must be first considered the right to freedom of contract on the part of the assignor, and this right, as a matter of the highest public policy, is not lightly to be interfered with." Next, it cannot be assumed that a contract for the product of future labors of a man's brain, as author or inventor, is necessarily against public policy, and, on the contrary, many examples may be given of cases entirely repugnant to this argument, and on which the argument on public policy as to the voluntary restraint is the other way. So far from necessarily discouraging future inventions or mental labor (which is the basis of the argument on public policy), such contracts may fairly be said often to encourage the author or inventor to such work and enable him to invent or produce. It cannot therefore be safe to hold, as was argued in the case, that the agreement was of itself against public policy and void. And in other decisions, contracts for the assignment of future inventions, relating to a particular subject, have been sustained and enforced. *Reece Folding Co.* v. *Fenwick (1905), 140 Fed. Rep. 287; Bates Machine Co.* v. *Bates, 192 Ill. 138; Birkery Manufacturing Co.* v. *Jones, 71 Conn. 113; 40 Atl. Rep. 917.*

My present view is that the question in a court of equity comes

finally to the issue, whether on the entire facts admitted or proved, the contract for the assignment of future inventions goes no further than a restraint fairly and reasonably necessary for the protection of the assignee, under all the circumstances of the case. And if no further facts appear on the hearing to change the aspect of the case as it appears in the bill, I conclude that there is no bar to its enforcement, on the ground that on the face of the bill the contract was necessarily a contract against public policy, and that its enforcement against an assignee, even when voluntary and with notice, is inequitable.

The bill itself shows the payment to the grantors of the sum of $1,995,000 for the inventions existing and future. The receipt of this sum as the consideration being admitted by the demurrer, it cannot, as matter of law and in the absence of any qualifying facts, be said that an agreement for the transfer of future inventions of the same character, based on the immediate payment to an inventor of such an enormous consideration, is, on the face of it, illegal. Under the circumstances as disclosed, it cannot be held to be beyond the power of the vendors, or to have been as to them, illegal or inequitable. Defendant must answer the case stated by the bill, and the demurrer to the amended bill will be overruled.

Before entering an order overruling the demurrer, the stipulation of counsel as to the amendment of the bill and demurrer should be carried out.