## A. B. DICK CO. v. FULLER.

(District Court, S. D. New York. July 16, 1912.)

1. Patents (§ 202*)—Assignment—Covenants—Validity—Disclosure of Future Inventions.

A covenant by the assignor of a patent covering stencil paper to disclose all future inventions relating to stencil paper and processes or methods for preparing, reducing, and using same, construed as covering such processes as bear some relation to the patents or processes already discovered, is valid.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 281–289; Dec. Dig. § 202.*]

2. Equity (§ 223*)—Bill—Demurrer.

A bill containing a general prayer for relief under defendant's covenant with complainant to disclose future inventions is good as against demurrer if the facts show that complainant is entitled to some relief, and the question whether the relief asked against defendant is so broad as to affect a third party cannot be raised by demurrer.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 502; Dec. Dig. § 223.*]

In Equity. Bill by A. B. Dick Company against Louis E. Fuller. On demurrer to the bill. Demurrer overruled.

Edmonds & Edmonds, for complainant.
Milne, Blake & McAneny, for defendant.

HAND, District Judge. I can see no ground for the allegation that the contract was unconscionable, or that it ought not to be enforced by a court of equity. So far as the bill shows, it was of Fuller's free will, and gave him $7,500 outright. The agreement to pay $3,000 a year to the Dermatype Company, for at least three years, only meant that Dwight should get about $1,500 a year, for three years, for his stock alone. The balance of $7,500 for Fuller's stock was what he got for the possibility that the company would continue. The covenant with the complainant to disclose all future inventions imposed substantially no new obligation upon him, as I construe it, in view of his prior engagements with the Dermatype Company. His covenant not to engage in business was the usual one under the circumstances, though I do not propose in this opinion to pass upon its legality.

[1] The chief objection raised is to the legality of Fuller's promise to disclose all future inventions relating to stencil paper. This was a direct covenant to the complainant. No question could arise of its legality had it in form been limited to improvements upon the original invention. Littlefield v. Perry, 21 Wall. 205, 22 L. Ed. 577; Reece Folding Machine Co. v. Fenwick, 140 Fed. 287, 72 C. C. A. 39, 2 L. R. A. (N. S.) 1094. That was in terms the covenant which Fuller had entered into with the Dermatype Company, and the only question which can arise is, first, whether his contract with the complainant should be construed more broadly; secondly, if it should, whether it is legal. The words are:

"All inventions * * * in or relating to stencil paper and processes, or methods for preparing, reducing and using same."

If necessary to sustain the agreement, I think I should construe it so as to limit it to improvements upon the inventions assigned, but I do not consider it necessary to go so far. The reasoning by which the assignment of future improvements is supported is that the improvement may so overlap the invention as to constitute a successful hostile competition. See Putnam, J., in Reece Folding Machine Co. v. Fenwick, supra. The same reasoning applies to any subsequent inventions which relate to the same subject-matter. I think the covenant was intended to cover such processes as bore some relation to the patents or processes already discovered, and, so limited, it is quite clear that competition might arise hostile to the original grant of the complainant.

I have read a number of cases relating to this subject. In nearly all of them the covenant is expressly limited to improvements upon the original invention, and in every case the courts have upheld it. I have found no case in which a covenant of this character has been held invalid by the courts, except the first opinion of Emery, V. C., mentioned below, and in several covenants have been upheld which were not limited to improvements, but to the same subject-matter as the main patents. The earliest and best of these is Printing & Numerical Registering Co. v. Sampson, L. R. 19 Eq. 462, in which Sir George Jessel, on page 464, uses the following language:

"Persons, therefore, who buy patents from inventors are in the habit of protecting themselves from the utter destruction of the value of the thing purchased by bargaining with the seller that he shall not use any new invention of his for producing that product in which they are about to deal at a cheaper rate, because, if he were allowed to do so, he might, the day after he had sold his patent, produce something which, without being technically an infringement, and without being technically an improvement, might accomplish the desired object in some other way, and utterly destroy the value of that which they had purchased. They, therefore, not unreasonably, and ·not unusually, make it a part of their bargain that whatever the man discovers of the same kind in the shape of machinery or apparatus which will produce the product in which they are about to deal shall ᴠbelong to them."

That language seems to me admirably applicable to the case at bar. Vice Chancellor Emery held the same thing in Consolidated R. E. & L. Co. v. United States L. & H. Co., 77 N. J. Eq. 285, 78 Atl. 684. In that case the covenant first included "improvements and inventions" without qualification. This he held bad in an unreported opinion, but, when there was added to the habendum that the improvements and inventions related to the patents assigned, he said the question was only of the reasonable value of the covenant to the grant. In Bates Machinery Co. v. Bates, 192 Ill. 138, 61 N. E. 518, a covenant not limited in any way was construed by the court as intended to be limited to inventions of the same character. In Birkery Manufacturing Co. v. Jones, 71 Conn. 113, 40 Atl. 917, there were two inventions, one affecting improvements upon the patents assigned, and the other affecting inventions or improvements in any other article which the corporation was engaged in manufacturing. The bill claimed a subsequent invention which was not an improvement on the patents sold, but was an invention of other articles which the corporation was engaged in manufacturing, and the covenant was upheld. I do not think it is essential to go so far as that case, nor do I mean to be understood as agreeing with it, if it did not appear that the covenant in that case was a reasonable accessory to the grant. The sound rule, I take it, must allow only incidental protection to the grant, and not mere means of repressing the inventor's genius. In the case at bar the allegations clearly are that the invention discovered relates to the patents assigned, and the covenant is so limited. I do not, therefore, think that in the face of this authority I ought, contrary to good sense, to initiate an exception which would limit the validity of such agreements only to improvements, strictly speaking.

[2] There remains a question of whether the Dermatype Company is a necessary party. If the complainant was suing upon an assignment of Fuller's covenant with the Dermatype Company, I think that the latter might be a necessary party, since it still retains rights in reversion under paragraphs 16, 17, and 18 of the contract of May 2, 1911, and, if the Dermatype Company were made a party, it might have to be arranged as a party plaintiff, which would destroy the jurisdiction of this court. However, the complainant sues upon its own covenant, and in that covenant the Dermatype Company has no interest, for no decree in this suit would affect the Dermatype Company's claims under its own covenants against Fuller. The question

as to whether the relief asked against Fuller is so broad as to affect the Dermatype Company cannot be raised by the demurrer, in view of the general prayer. The bill is good, if the facts show that the complainant is entitled to some relief. Patrick v. Isenhart (C. C.) 20 Fed. 339. That is the function of a prayer for general relief. Moreover, no damage can come to the Dermatype Company even if too broad a decree be entered, for they are not concluded by the decree, and, if subsequently they sue Fuller, who himself is embarrassed by the decree of this court enjoining him from doing any business, the complainant here would be a proper party to that suit. The character of the relief will be determined upon the hearing if the complainant gets a decree.

I will not take up the question of the validity of the covenant not to engage in business, or of the covenant against disclosing inventions to others, for it is sufficient that some relief is proper under the allegations, as I have just said.

The demurrer is overruled, with costs, the defendant to answer over.