## THOMPSON v. AUTOMATIC FIRE PROTECTION CO.

(Circuit Court of Appeals, Second Circuit. January 13, 1914.)

### No. 81.

1. SPECIFIC PERFORMANCE (§ 71*)—PATENTS—CONTRACT TO ASSIGN.

A contract, whereby defendant agreed to work for complainant on inventions and to assign to him any invention or patentable improvements he might make during such employment, outside of his regular working hours, for which complainant agreed to pay him an unnamed compensation, was valid and subject to specific performance.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 1204; Dec. Dig. § 71.*]

2. PATENTS (§ 203*)—PATENTABLE INVENTIONS—ASSIGNMENT—NOTICE TO ASSIGNEE.

Where S. contracted to work on certain inventions and to assign any invention or patentable improvement that he might secure during such employment to complainant, and before assigning an invention to defendants informed them that complainant had forced him to assign other patents, and that he wanted to keep the patent on the particular invention away from complainant, though he felt under some obligation to offer it to him, such information constituted notice to defendants of complainant's rights under the contract.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 290-294; Dec. Dig. § 203.*]

Appeal from the District Court of the United States for the Eastern District of New York.

This cause comes here upon appeal from a decree of the District Court, Eastern District of New York, which ordered the specific performance by defendant Shipman of a contract between him and the complainant under which Shipman was to work out certain improvements on Thompson's inventions in automatic sprinkler alarm apparatus and to assign the improvements made to Thompson. The issues also involved the determination of the validity of certain assignments and agreements which the defendant company had subsequently secured from Shipman. The District Court held that Thompson's right to receive an assignment of the improvements and patent therefor was superior to those of defendant company which, it was held, had sufficient notice of Thompson's right to put it on guard. The opinion of Judge Chatfield will be found in 197 Fed. 750.

Griggs, Baldwin & Pierce, of New York City (Martin Conboy, of New York City, of counsel), for appellant.

Duncan & Duncan, of New York City (Frederick S. Duncan and Harry L. Duncan, both of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LACOMBE, Circuit Judge (after stating the facts as above). The facts will be found set forth with sufficient fullness in Judge Chatfield's opinion; they need not be repeated here at length.

[1] It is contended that the contract is not one which a court of equity should enforce. As testified to by complainant, and there is no contradiction of his testimony, it provided that Shipman should undertake to perfect inventions which Thompson had already started and should assign to the latter whatever he might discover or invent along the line of fire protection devices. Shipman was in the employ of a company of which Thompson was president; his work was to be done outside of his regular working hours; Thompson was to pay him for the time he put on this outside work and if any invention proved valuable was to pay him such further sum as might in Thompson's judgment be correct according to the value of the results of his work. This contract was perhaps a hard one, but we find nothing extraordinary about it, no doubt many such contracts are made with employés. It did not as defendants contend mortgage Shipman's inventive genius for all time; he could cease doing the extra work any time he pleased and thus terminate the contract. If before he did so discontinue, he found out anything patentable, assisted thereto in a field he had never worked in, by the disclosures of what Thompson had already accomplished, there seems to be nothing unconscionable in requiring him to turn it over. If in fact he was not paid for his extra work, he had a good cause of action for it. Evidently the reason Thompson did not pay him for his extra time was because he (Thompson) had some fair ground for suspecting that Shipman was planning to get the better of him.

Thompson's testimony as to the making of the contract is to some extent corroborated by other witnesses to whom Shipman, long before any controversy arose, made explanations as to how it happened that he had Thompson's models and papers on his own desk.

[2] The crux of the case is whether defendants had notice of the arrangement with Thompson sufficient to put them on inquiry, before they took assignment from Shipman. The evidence is not very strong, but defendants themselves admit that Shipman told them Thompson had forced him to assign other patents and that he wanted to keep this patent away from Thompson. Also that he felt under some obligation to offer it to Thompson.

It seems to us that a business man of reasonable care and prudence would, under these circumstances, before putting his money into an enterprise, have gone to Thompson and asked him if he was making any claim to this invention of Shipman and, if he said he was, would have asked him what was the nature of his claim, so that the inquirer might advise himself whether he could safely purchase.

We concur with Judge Chatfield, who has fully discussed the facts. The decree is affirmed, with costs.