STANDARD PLUNGER ELEVATOR CO. v. STOKES et al.

(Circuit Court of Appeals, Second Circuit. February 10, 1914.)

No. 156.

1. MASTER AND SERVANT (§ 62*)—INVENTIONS OR DISCOVERIES—CONSTRUCTION OF CONTRACT.

A contract between parties who were about to acquire a corporation and a party who agreed to enter its employment when acquired in the business of manufacturing and selling elevators, elevator machinery, and kindred appliances, after providing for the assignment of the employé's interest in a valve and starting plug and the patent therefor, and that all inventions, ideas, and suggestions made by the employé during the period of employment with relation to such valve and appurtenances, and all inventions of elevator valves, plugs, methods of control, and valve appliances, and machinery for manufacturing them, should be the property of the corporation, provided that the employé thereby granted to the corporation the exclusive license to use all other future patents and inventions devised or acquired by him with relation to elevators and their appliances not otherwise provided for upon payment of a specified royalty; the term of the license to commence when the corporation commenced business.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

*Held* that, as the contract evidently contemplated some interim of time between its execution and the acquisition of the corporation and consequent employment, this last provision should be construed to apply to inventions conceived during such interim, and should not be given the extremely harsh and possibly unconscionable construction that it covered all inventions indefinitely, though conceived long after the employment had ceased, especially as the term of a license for such an invention could not commence when the corporation commenced business.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 71; Dec. Dig. § 62.*

Right to inventions as between employer and employé, see note to Pressed Steel Car Co. v. Hansen, 71 C. C. A. 221.]

2. MASTER AND SERVANT (§ 62*)—INVENTIONS OR DISCOVERIES—CONSTRUCTION OF CONTRACT.

A contract of employment, by which the employé assigned his rights in a plunger elevator valve and starting plug invented by him, which provided that all inventions and improvements made and patents obtained by him during the employment with relation to such valve and its appurtenances, including present starting plug or method of elevator control and all inventions of elevator valves, plugs, or methods of elevator control and value appliances and machinery for manufacturing such inventions, should be the property of the employer, was not restricted to inventions and improvements relating to the particular valve and starting plug already invented, but covered any invention or improvement relating to a method of plunger elevator control.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 71; Dec. Dig. § 62.*]

3. COSTS (§ 230*)—ON APPEAL—NEITHER PARTY SUCCESSFUL.

Where both parties appealed and neither wholly succeeded, no costs would be allowed.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 869–876; Dec. Dig. § 230.*]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon cross-appeals from a decree of the District Court, Southern District of New York, in a suit for specific performance of contracts to transfer to complainant certain patents, applications, and inventions. The main contract, which is all that need be here discussed, is dated September 13, 1902. It is a contract of employment between Larson, party of the first part, and Hoyt, Woodin, Stokes, and Jones, parties of the second part. This contract was assigned to complainant. The defendants named in the bill are Stokes, Jones, Larson (the employé and inventor of all the patents except one which is covered by a similar contract with Jones), Wetherill, and the Greeley Square Hotel Company. No decree was made against the Hotel Company; Larson and Wetherill being nonresidents, the bill was dismissed as to them. The patents of Larson with which the bill is concerned were issued to Stokes, Jones, and Larson as assignees of patentee.

The contract was first considered and construed by Judge Ward in a suit on patent No. 899,224, upon motion for preliminary injunction (opinion not reported). Upon appeal from his decision this court (200 Fed. 766, 119 C. C. A. 246) disposed of that case without expressing any opinion as to the construction of the patent. In another suit the same contract was discussed by Judge Mayer (196 Fed. 47), who concurred with Judge Ward. In the suit now here on appeal Judge Holt followed Judges Ward and Mayer in their construction of the contract. The whole contract need not be recited, except for the passages which will be quoted in the opinion below; it is of the same general character as other contracts for the employment of persons in the

practice of an art, with the proviso that whatever patentable advances in such art may be worked out by them while in such employ shall belong to the employer.

L. W. Southgate, of New York City, for appellants.

C. V. Edwards and Alexander T. Mason, both of New York City. for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. [1] We find nothing difficult or obscure in this contract. When it was executed the parties of the second part were "about to acquire" a certain corporation and the party of the first part agreed to enter the employment of the corporation when it was acquired. The contract is dated September 13, 1902; Larson testified that the corporation began business and he entered their employ about January 1, 1903; other witnesses say it was some time in September, 1902, but concededly it was subsequent to the execution of the contract and the language of the contract plainly contemplates the existence of some interim of time, long or short, between its execution and the acquisition of the corporation and consequent employment of Larson. The contract also contemplated another period of time, beginning necessarily subsequent to the first period, viz., the term of employment, extending from the day Larson should enter the employ of the acquired corporation for five years and any renewals thereof.

The business contemplated by the contract and in which Larson was to be employed was the "manufacturing and selling elevators of the plunger type, elevator machinery, and kindred appliances." The contract also recites the desire of the parties of the second part to acquire, from Larson, all his patents, patent rights, letters patent acquired and to be acquired, and inventions of a certain valve applicable to elevators of the "plunger" type and a certain starting plug or method of elevator control.

Provision was carefully and exhaustively made for turning over Larson's inventions, etc. The employé (Larson)—

"expressly agrees that he will not at any time while in such employ furnish any ideas, inventions, or suggestions with reference to said valve and its appurtenances to any person or persons or corporation except to the employers and the corporation to be organized by them as aforesaid, and that all such inventions or ideas during said period shall be the property of said corporation; that he will not leave such employ until its termination unless sooner discharged for good cause; and that all inventions, improvements, ideas, and suggestions made by him and patents obtained by him severally or jointly with any other person or persons during the entire period of his said employment, and any written renewal thereof made by him with said corporation, with relation to said valve and its appurtenances, including present starting plug, or method of elevator control, and all inventions of elevator valves, plugs, or methods of elevator control and valve appliances, and to machinery for manufacturing the same, are and shall be the sole property of said corporation, free from any legal or equitable title of the employé, and that all necessary documents for perfecting such title shall be executed by the employé and delivered to said corporation on demand."

Analyzing this part of the contract, we find it provides that:

(1) During his employment, Larson shall not furnish any ideas, in-

ventions, or suggestions in reference to a certain valve and appurtenances to any outsider.

(2) All inventions or ideas touching valve, etc., which may emanate from Larson during the period of employment, shall be the property of the corporation.

(3) All inventions, ideas, and suggestions made by him, during the period of employment, with relation to (a) said valve and appurtenances; (b) all elevator valves, plugs, methods of control, and valve appliances; (c) machinery for manufacturing the same—shall be the sole property of the corporation, and Larson will perfect its title by executing all necessary documents.

These clauses most carefully provided for everything in the way of invention and improvement, relating to the business Larson was to be employed in, which he might discover while he was thus employed. It appears, however, that before he signed the contract he had patents or applications for a valve and starting plug. These, not having been discovered during employment, were not covered by the clauses above quoted. Therefore the following additional paragraph was inserted:

"The employé hereby assigns to the employers, in consideration of the premises, all of his right, title, and interest in and to said valve and starting plug, and the patent rights and letters patent to be issued therefor, provided that, as soon as said corporation commences business, the sum of $5,100 be paid to the employé by said corporation."

This money was paid and assignments duly executed.

After some other details, which need not be referred to, the contract provides as follows:

"The employé also hereby grants to the said corporation the exclusive license to use all other future patents and inventions devised or acquired by him with relation to elevators and their appliances, or capable of use in connection therewith, and not above provided for upon payment to him of a royalty of $1 for each several invention so made or acquired by him, provided, however, that the term of said license shall commence when said corporation commences business, and shall terminate if and when said Hoyt and Woodin cease to be directors of the said corporation."

Complainant contends that this clause should be given the broad construction of which its text is susceptible, and that under it all inventions of the kind referred to, the first conception of which came to Larson only after his employment had ceased practically, pass to complainant as exclusive licensee. As thus construed, the clause would be an extremely harsh one; it might even be found unconscionable, for it mortgages his inventive faculties to complainant for an indefinite period subsequent to employment, in relation not only to elevators of the "plunger" type, but to steam and electric elevators as well. So harsh a construction should not be given to the contract, unless its language precludes any more reasonable construction.

It seems to us that the contract is susceptible of a very simple and more reasonable interpretation.

By the other clauses the corporation got: (a) All Larson had invented down to the date of signing the contract. (b) All he might invent during the period that might elapse between the time his employment actually began and the time it terminated.

But, as already pointed out, it was contemplated that between the date of signing the contract and the date of acquisition of the corporation and employment of Larson there would be a period of time which might last for days or months. During that period Larson might conceive some new idea as to an improvement, might try it out sufficiently to satisfy himself it was practicable, and might embody it in an application, and perhaps a model, and file his application, all before his employment actually began. This might turn out to be a very valuable invention, for which a patent might thereafter issue. Within the same period he might also acquire some other patent relating to the same subject. But under the text of the earlier clauses of the contract he would not be obligated to transfer either of these to the corporation. It was to meet just this difficulty that the clause now under consideration was inserted. All inventive ideas, applications, and patents originating within that period would be covered by this clause, which provides for such ideas devised by him and patents acquired by him in a "future" which began to run the moment the contract was signed. That it was not contemplated that this "future" period of invention and acquisition should extend indefinitely is manifest from the clause which says the term of the license shall commence when the corporation commences business, a date which would presumably be coincident with the date when his employment began.

It would be impossible to make the term of license begin when the corporation commences business, in the case of an invention which was not conceived until months or years after such business had in fact commenced.

[2] We are satisfied that complainant will be accorded all the relief to which it is entitled under this contract, if all the inventions or improvements of Larson originating during the period of employment are assigned to it. We think that the clause covering such inventions and improvements should not be so narrowly construed as to restrict them to such only as relate to the particular valve and starting plug which Larson had devised before the contract was signed. It must have been the intention of the parties to provide for improvements in the particular art in which they undertook to engage, and any invention or improvement which may fairly be found to relate to a method of plunger elevator control would seem to be within the clause.

We concur, therefore, with Judge Holt in so much of the decree as requires an assignment of the patents enumerated in paragraph 15 of the bill, except 877,572, which relates, not at all to elevator control, but to drilling holes in the ground, for oil wells, artesian wells, and wells for plunger elevators.

We think, however, that complainant was entitled to a decree which would allow him to show, if he could, that there are patents for other devices than those enumerated in paragraph 15 of the bill, which were conceived of by Larson during his period of employment.

[3] With such modification the decree is affirmed. Since both sides appealed and neither has wholly succeeded, there will be no costs of this appeal.