GEORGE F. KING & another *vs.* JOHN M. GANNON & others.

Worcester.     September 26, 27, 1927. — October 14, 1927.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Contract,* Implied.   *Custom.   Equity Jurisdiction,* To enjoin use of unpatented invention.

A custom in the machine shop business, "that a person building either an experimental machine or a special machine designed for certain purposes, which machine is not to be marketed, should not make another similar machine for a different customer nor use the knowledge gained in the building of such a machine," is unreasonable and not enforceable as an implied part of a contract by the proprietor of a machine shop with one for whom he has built such a machine, not patented.

BILL IN EQUITY, filed in the Superior Court on October 15, 1926, and afterwards amended, by George F. King and Jane S. King, doing business under the name of Tilson Manufacturing Company, and alleged to be successors in business to the defendant Gannon, against John M. Gannon; Warren F. Fraser, doing business under the name of Warren F. Fraser Engineering Company; and James K. Tufts, doing business under the name of The Tufts Machine Company, to enjoin the defendants Fraser and Tufts from designing or constructing a machine of a character described in the opinion and to require the defendant Gannon by appropriate proceedings to bring about a cessation of work by Fraser and Tufts on a machine in process of construction by them for Ammidon and Company.

Horace L. Varian, doing business under the name of Ammidon and Company, was admitted as a party defendant.

The suit was referred to a master. Material evidence and findings by the master are stated in the opinion. After a hearing by *Lummus*, J., there were entered by his order an interlocutory decree confirming the master's report, and a final decree, enjoining the defendant Fraser as prayed for and dismissing the bill as to the other defendants. The plaintiff and the defendant Fraser appealed.

*J. A. Crotty*, (*G. H. Mason* with him,) for the plaintiffs.

*W. E. Fowler*, (*A. J. Young* with him,) for the defendants Tufts and Varian.

PIERCE, J. Prior to May 25, 1926, the plaintiffs, as co-partners, and the defendant John M. Gannon, as competitor, were engaged in the business of manufacturing and selling tin tub cover fasteners. Gannon manufactured almost exclusively the turned over end type of fasteners. In 1918, he engaged the services of the defendant Fraser to draw plans, design and build a special machine by which the fasteners might be made. Fraser built a machine which when completed automatically cut the tin in proper size, put the nails in the same, and folded over the ends of the tin to retain the nails. No patent on this machine was ever issued, or applied for.

In 1920, Gannon employed Fraser to design and make working drawings for a new machine, which was to have four nails in place of two, for $600. Fraser designed and furnished drawings, and this latter machine was made under the supervision of Fraser in the machine shop conducted by the defendant James K. Tufts. On February 13, 1920, Fraser agreed with Gannon on the invoice submitted to him by Fraser as follows: "It is a part of the consideration for which the above sum of $600 has been paid that Warren F. Fraser shall not design a machine for doing this work for any other parties, and shall not supply copies of this design to any other parties except John Gannon so shall instruct him."

In 1922, Gannon engaged Fraser to design and supervise the building of a second four-nail machine. This machine was similar to the 1918 machine, but was quite dissimilar to

the 1920 machine in certain mechanical features. The product, however, was exactly the same as that made by the 1920 machine. Neither the 1920 nor the 1922 machine was protected by patents. The 1922 machine was built in the shop conducted by Tufts who knew Gannon was having this machine made, as he had had earlier machines made, for his special purposes and not for placing the same on the market; and he further knew that Gannon took great precaution to keep secret the existence of the machines.

In October, 1925, the defendant Varian, who carried on business under the name and style, Ammidon and Company negotiated with Tufts to build a machine that would make the same type of tub fasteners as were manufactured by Gannon. Tufts wrote to Varian that so far as he knew "there were no patents on this sort of machinery. That he would like to consider the matter carefully, but . . . [could] think of no reason why . . . [he] should not build similar machines for . . . [Varian's] company." On December 9, he received a written order from Varian instructing him to proceed in the matter of designing and building of a machine for the production of a tub fastener which will be "when completed, four inches in length, one-half inch in width, with two nails in each end of the tin, side by side, with the end of the tin turned over to retain the nails in position." Having entered into the arrangement, Tufts engaged the services of Fraser to design and make working drawings for the machine. Tufts did not know that Fraser had made the agreement appended to the Gannon invoice under date of February 11, 1920, and he did not acquire knowledge of the same until after the present proceedings were instituted. Varian acted entirely in good faith in making the contract with Tufts. He had no knowledge of any contract existing between Fraser and Gannon, and he had inquired whether Tufts was in a position to build him a machine and relied on the statement from Tufts to the effect that there was no reason why Tufts should not build a machine to make automatically the four nail turned over end tub fasteners.

At the hearing before the master it appeared that the machine built by Tufts for Varian was substantially finished;

that it resembles in design the machine manufactured by Fraser for Gannon in 1918; that it varies materially from the machine designed by Fraser and manufactured in the Tufts shop in 1920. The finished product of each machine is precisely the same. The machine built for Varian is similar in principle not only to the 1918 model but to the one subsequently built for Gannon, in that the operations required to do the work and the order in which operations are performed are the same. The present machine could not be built from the drawings or designs of the 1918, the 1920, or the 1922 machines; nor from their working drawings or specifications. It was independently designed by Fraser without the actual working drawings and specifications of the previous machines, but his past experience on the Gannon machines was much relied on. Each machine was the product of Fraser's mind; and Tufts relied upon his experience in building the 1920 and 1922 machines for Gannon in fabricating the present machine.

It is stated in the master's report: "No written or oral agreement existed between the defendants, Tufts and Gannon, by which Tufts should never build another machine for anybody, like or similar to the 1922 machine which Tufts had built for Gannon from the designs and in accordance with the specifications furnished by Fraser, unless as a matter of law such may be implied from the facts reported herein. I find it to be a well recognized and general custom in the machine shop business that a person building either an experimental machine or a special machine designed for certain purposes, which machine is not to be marketed, should not make another similar machine for a different customer nor use the knowledge gained in the building of such a machine. I find that Tufts knew of this custom and that it was by reason of this custom that he had written to Varian that '. . . [he] should want to consider the matter carefully.' In this connection it should be reported that Tufts went to see Fraser and inquired of him whether Fraser was at liberty to undertake the designing of the new machine and whether Fraser knew of any reason why Tufts should not manufacture such a machine for the Ammidon Company.

If material, I find that he was in both instances advised by Fraser that there was no reason why either he, Fraser, should not undertake to design the machine or why Tufts should not build such a machine for the Ammidon Company. I find, however, that Tufts cut off from the blue prints of this present machine both the name of the machine itself and the name of the designer for the purpose of concealing as far as possible the fact that a machine of this type was being constructed by him."

The only question before this court on the above statement of the facts in substance found by the master is whether the custom in the machine shop business, known to Tufts, "that a person building either an experimental machine or a special machine designed for certain purposes, which machine is not to be marketed, should not make another similar machine for a different customer nor use the knowledge gained in the building of such a machine," is a custom valid in law. The custom or usage invoked by the plaintiffs to establish an implied contract between Gannon and Tufts, which is asserted to have arisen from the fact alone that Tufts built in 1920, and again in 1922, a special machine not to be marketed from plans and drawings made by Fraser for Gannon, is one that leads to burdens upon the machinist which he should not be held to have undertaken without an express contract so to do. Under such a custom the individual machinist without limit of time or space is restrained and restricted in the pursuit of his trade to work which shall not produce a machine that in its fundamental principle infringes a machine he has built at some previous time for the inventor, or from designs of that sort of a machine. The protection afforded by the alleged custom to an inventor of a secret machine, not patented, would not be reasonably necessary to inventors of machines or one to be approved by the court, where the effect of its enforcement is to restrain an individual machinist in the doing of work useful to the community and to deprive him of means of obtaining a livelihood, but does not restrain machinists at large in their legal right to build such special machine for any person from any plans or designs which are lawfully obtained. The policy of the law is not to counte-

nance contracts by which a person endeavors to restrain himself from doing productive work at any time, which is useful to the community and remunerative to himself. *A fortiori*, if it discountenances express contracts it will not itself create implied contracts of that nature. It results that the alleged custom is unreasonable and therefore not enforceable against Tufts as an implied part of his contract with Gannon.

The facts found do not warrant the contention of the plaintiffs that there was such a confidential relationship between Gannon and Tufts as imposed upon Tufts a duty not to make use of the knowledge of the basic and underlying principle of the invention of Fraser for Gannon, which Tufts acquired in building the machines in 1920 and 1922.

The defendant Warren F. Fraser neither argued nor filed a brief in support of his appeal. It is therefore deemed to be waived.

*Decree affirmed with costs.*