**GUTH v. MINNESOTA MINING & MFG. CO.**
No. 5105.

Circuit Court of Appeals, Seventh Circuit.
June 29, 1934.

Rehearing Denied Oct. 1, 1934.

386

Francis E. McGovern, of Milwaukee, Wis., for appellant.

Whitman Taylor, of Chicago, Ill., and Leo Mann, of Milwaukee, Wis., for appellee.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above).

Appellant was employed by appellee in the year 1927 as a chemical engineer at a salary of $150 per month, which wage was thereafter increased from time to time until it reached $225 per month. His employment terminated in June, 1930. His work was in appellee's research laboratory. His assignment was to solve the problem presented by the laminating or tearing of paper tape when being unwound from the roll or removed from the surface to which it was adhered and also to endeavor to reduce the cost of adhesive tape manufacture.

Appellee for many years had been engaged in the manufacture of masking tape, abrasives, etc. Masking tape is a pressure sensitive tape made by placing pressure sensitive adhesive on paper backing made of paper which has been unified. The result is a paper that is wound in rolls and then unwound and placed on surfaces and which can be removed from the surface without splitting or laminating the tape; the avoidance of splitting permits the tape to be reused repeatedly. The paper backing is unified by saturating it with an adhesive solution which binds or welds the fibres together, thus unifying the paper so it will not laminate.

In appellee's laboratory and research department there were some thirty chemists and chemical engineers employed during the period covered by appellant's employment. All employees who were engaged in research work were required to sign contracts wherein they agreed, among other things, that inventions by them perfected should be assigned to the company. Appellant executed and delivered to appellee such a contract, a copy of which is herewith set forth.[1]

---

[1] "In Consideration of One Dollar, the receipt whereof by me is hereby acknowledged, and of my employment hereafter during such time as may be mutually agreeable to myself and that company, viz.: by the Minnesota Mining & Manufacturing Company, a corporation, manufacturer of abrasives, adhesives and related materials, I hereby assign and agree to assign to said company, its successors

In the course of appellant's employment he went to Green Bay, Wisconsin, to study methods of can drying which differed from the regular procedure of tungsten drying of adhesive creping. Following this trip, appellee purchased a machine for further experimental and testing purposes. Appellant continued his experiments with this machine with the result, as appellee claims and the court found, that about February 26, 1930, a new product was conceived for which appellant could validly apply for a patent and which patent appellee was entitled to because of the aforesaid agreement. After appellant left appellee's employment there was submitted to him an application for a patent which he refused to sign because he claimed he was not the inventor of the product covered thereby and disclosed therein, but that he was shown such a product in the Green Bay factory and that someone in that factory, rather than he, was the inventor. He also challenged the validity of the contract above set forth. It is unnecessary to go into detail in respect to the other invention because the foregoing fact statement is sufficient to present the issues which appellant has raised and which grow out of the aforementioned employment agreement. Both questions are of more than ordinary interest.

The two questions are: (a) Was the contract, which appellee relies upon to enforce the assignment of the patent application, against public policy and therefore void? (b) Upon the evidence here presented, was the court justified in requiring appellant to sign an application for a patent which necessitated his making an affidavit which contained material statements which he says he could not truthfully make?

The contract obligated appellant to assign:

"(a) all my rights to inventions which I have made or conceived, or may at any time hereafter make or conceive, either solely or jointly with others, relating to abrasives, adhesives or related materials, *or to any business in which said company during the period of my employment by said company or by its predecessor or successor in business, is or may be concerned,* and

"(b) all my rights to inventions which, during the period of my employment by said company or by its predecessor or successors in business, I have made or conceived, *or may hereafter make or conceive,* either solely or jointly with others, or in the time or course of such employment, or with the use of said company's time, material or facilities, or relating to any subject matter with which my work for said company is or may be concerned; and

"(c) I further agree, without charge to said company, but at its expense, to execute, acknowledge and deliver all such further papers, including applications for patents, and to perform such other acts as I *lawfully* may, as may be necessary in the opinion of said company to obtain or *maintain* patents for said inventions in any and all countries. * * * *"

The right of an employer to contract for patentable discoveries made by its employee within certain limits is well recognized.[2]

Equally well settled is the proposition

---

and assigns, (a) all my rights to inventions which I have made or conceived, *or may at any time* hereafter make or conceive, either solely or jointly with others, relating to abrasives, adhesives or related materials, *or to any* business in which said company during the period of my employment by said company or by its predecessor or successor in business, is or may be concerned, and (b) all my rights to inventions which, during the period of my employment by said company or by its predecessor or successors in business, I have made or conceived, or may hereafter make or conceive, either solely or jointly with others, or in the time or course of such employment, or with the use of said company's time, material or facilities, or relating to any subject matter with which my work for said company is or may be concerned; and I further agree, without charge to said company, but at its expense, to execute,

acknowledge and deliver all such further papers, including applications for patents, and to perform such other acts as I lawfully may, as may be necessary in the opinion of said company to obtain or maintain patents for said inventions in any and all countries and to vest title thereto in said Minnesota Mining & Manufacturing Company, a corporation, its successors and assigns; and I further agree that I will not divulge to others any information I may obtain during the course of my employment relating to the formulas, processes, methods, machines, manufactures, compositions, or inventions of said company without first obtaining written permission from said company so to do."

2 (1) Contract covering improvements on patent assigned. Littlefield v. Perry, 21 Wall. (88 U. S.) 205, 22 L. Ed. 577; A. B. Dick Co. v. Fuller, 6 F.(2d) 393 (D. C. N. Y.); Id., 198 F. 404 (D. C. N.

that such negative employment contracts are subject to legal limitations.[3]

Applying the rules of these decisions to the contract under review, it is worthy of note (a) that the agreement is not limited in point of time. It covers inventions which the employee has made or conceived or *may at any time hereafter* make or conceive. (b) It is not limited to the subject matter to which the employee directed his attention when in the employ of appellee, but extends to any business "in which said company during the period of my employment by said company or *by its predecessor or successor in business is* or *may be* concerned." In other words, if appellee's predecessor were engaged in any other business to which appellant's discovery might relate or its successor shall be or *may* be concerned, the contract applies.

Upon the facts peculiar to this case we are convinced that those provisions of the contract which were limitless in extent of time and in subject matter of invention were contrary to public policy. Guth was a chemical engineer. He was more or less successful in research work, as is shown by the fact basis of this litigation. He was a research man prepared to devote his life to discoveries of value to industry. Under this contract he was, however, if he worked in another laboratory or for another manufacturer, required to assign his discoveries to appellee. This would effectively close the doors of employment to him. Until the end of the chapter he was compelled either to work for appellee or turn over the children of his inventive genius to it. Such a contract conflicts with the public policy of the land,[4] which is one that encourages inven-

Y.); Lion Tractor Co. v. Bull Tractor Co., 231 F. 156 (C. C. A. 8); Wege v. Safe-Cabinet Co., 249 F. 696 (C. C. A. 6); Foreman's Systems v. Milk Dealer's Crate Corp., 13 Del. Ch. 351, 120 A. 358; Boone v. Hess Dustless Mining Mach. Co., 76 W. Va. 716, 86 S. E. 752; Birkery Mfg. Co. v. Jones, 71 Conn. 113, 40 A. 917 (1898); Troy Iron & Nail Factory v. Corning, 14 How. 193, 14 L. Ed. 383; Philadelphia, W. & B. Railroad Co. v. Trimble, 10 Wall. 367, 19 L. Ed. 948; Nesmith v. Calvert, Fed. Cas. No. 10,123 (C. C.ʲMass.); Reece Folding Mach. Co. v. Fenwick, 140 F. 287, 2 L. R. A. (N. S.) 1094 (C. C. A. 1); Westinghouse Air-Brake Co. v. Chicago, B. & Mfg. Co., 85 F. 786 (C. C. Ill.); West Disinfecting Co. v. U. S. Paper Mills, Inc., 44 F.(2d) 803 (C. C. A. 3); Chadeloid Chem. Co. v. H. B. Chalmers Co., 243 F. 606 (C. C. A. 2); Cons. Ry. Elect. Lighting & Equip. Co. v. U. S. Light & Heating Co., 77 N. J. Eq. 285, 78 A. 684 (1910); Aspinwall Mfg. Co. v. Gill, 32 F. 697 (C. C. N. J.); Miller Saw-Trimmer Co. v. Cheshire, 172 Wis. 278, 178 N. W. 855; Corpus Juris, Patents, § 376; Federal Law on Contracts, § 272; Zabel on'The Patent Royalty Contract, page 84.

(2) Employee's contract to convey all inventions during course of employment relating to employer's business. Goodyear Tire & Rubber Co. v. Miller, 22 F. (2d) 353 (C. C. A. 9); Thompson v. Automatic Fire Prot. Co., 211 F. 120 (C. C. A. 2); Miss. Glass Co. v. Franzen, 143 F. 501, 6 Ann. Cas. 707 (C. C. A. 3); Thibodeau v. Hildreth, 124 F. 892, 63 L. R. A. 480 (C. C. A. 1); Walker on Patents, § 323; Toledo Machine & Tool Co. v. Byerlein, 9 F.(2d) 279 (C. C. A. 6); Triumph Elec. Co. v. Thullen, 235 F. 74

(C. C. A. 3); New Jersey Zinc Co. v. Singmaster (D. C.) 4 F. Supp. 967; Wright v. Vocalion Organ Co., 148 F. 209 (C. C. A. 1); Hulse v. Bonsack Mach. Co., 65 F. 864 (C. C. A. 4); Thompson v. Automatic Fire Prot. Co., 155 F. 548 (C. C. N. Y.); Martin v. Tenn. Copper & Chemical Corp., 66 F. (2d) 187 (C. C. A. 3); Fairchild v. Dement, 164 F. 200 (C. C. Ill.); Corpus Juris, Patents, § 376; Federal Law of Contracts, § 272; Conway v. White, 9 F.(2d) 863 (C. C. A. 2); Bates Mach. Co. v. Bates, 192 Ill. 138, 61 N. E. 518.

[3] Assignments in gross of future inventions are not favored. Lion Tractor Co. v. Bull Tractor Co., 231 F. 156 (C. C. A. 8); Eastern Dynamite Co. v. Keystone Powder Mfg. Co., 164 F. 47, 50 (C. C. Pa.); Westinghouse Air-Brake Co. v. Chicago B. & Mfg. Co., 85 F. 786 (C. C. Ill.); Walker on Patents, § 323; King v. Gannon, 261 Mass. 94, 158 N. E. 346, 54 A. L. R. 1215; Monsanto Chem. Works v. Jaeger, 31 F.(2d) 188 (D. C. Pa.); New Jersey Zinc Co. v. Singmaster (D. C.) 4 F. Supp. 967; Aspinwall Mfg. Co. v. Gill, 32 F. 697 (C. C. N. J.); T. B. Harms, etc., v. Stern, 229 F. 42 (C. C. A. 2); Corpus Juris, Patents, § 376; Fed. Law of Contracts, § 272.

[4] Lion Tractor Co. v. Bull Tractor Co., 231 F. 156 (C. C. A. 8); Thompson v. Automatic Fire Protection Co., 211 F. 120 (C. C. A. 2); Eastern Dynamite Co. v. Keystone Powder Mfg. Co., 164 F. 47, at page 50 (C. C. Pa.); Westinghouse Air-Brake Co. v. Chicago Brake & Mfg. Co., 85 F. 786 (C. C. Ill.); Chadeloid Chemical Co. v. H. B. Chalmers Co., 243 F. 606 (C. C. A. 2); National Cash Register Co. v. Remington Arms Co., 242 N. Y. 99, 151 N. E. 144; Walker on Pat-

tions and discourages the exclusion of an employee from engaging in the gainful occupation for which he is particularly fitted for all time, anywhere in the United States.

Much closer, however, is the question which arises from the fact that the first invention here involved was made by appellant during the period of his employment and related to a subject matter upon which he worked as a laboratory research man for appellee. That is to say, the first invention was conceived while appellant was working for appellee on the latter's time and pay. The second invention was an improvement on the first. This fact presents the interesting question of whether a contract containing negative employment covenants which are against public policy may still be enforced to the extent that such negative covenant contract provisions are reasonable and legitimate. In short, may such a contract be void in part and valid as to certain provisions?

█ On this issue appellant occupies no more favorable position than appellee held on the other phase of this question. Appellant was employed as a researcher. His new product was conceived while he was so employed by appellee. It related to the very subject matter for which he was employed and covered the product which his employer was engaged in manufacturing.

Equity is as sensitive to the appeal of one party as it is to the other. It is willing to deny relief to anyone who has overreached the other. But said other should be in court with clean hands. His standing should be free from unfair advantage taken of his adversary.

The decisions are many on the subject.[5] The statement appearing in Page on Con-tracts, § 788, we think, expresses the consensus of opinion and correctly states the rule of law which we must apply.

"If the parties have stipulated for an entire area without any division thereof into parts by the terms of the contract, the weight of authority is that the courts will not sever the contracts if the parties have not done so themselves, although there is authority indicating that the courts will sever such areas. In any event, the court will, if possible, construe the contract as severing the different areas. If a covenant in restraint of trade extends over too wide an area, it may be held valid as to a lesser area if the parties, by the terms of the contract, have stipulated for restraint of competition for several different areas, and such covenant is reasonable as to part and unreasonable as to the residue. Thus an agreement not to engage in business in a given county or elsewhere, or in a given country or state or the United States, may be in each case valid as to such county and void as to the rest of the area contracted for."

The contract before us contains stipulations capable of being construed separately. In short, the contract is divisible. Some of the covenants are contrary to public policy and non-enforceable. Others are valid and enforceable in a court of equity (although courts are not required in all cases to grant the specific performance of such contracts).

█ The two discoveries which are the subject matter of this litigation fell within the valid provisions of the agreement.

█ The second phase of this appeal turns upon our answer to two questions. May a court of equity compel a defendant to file a verified application for such patent when said defendant asserts that he is not the first

ents, § 323; King v. Gannon, 261 Mass. 94, 158 N. E. 346, 54 A. L. R. 1215; Monsanto Chem. Works v. Jaeger, 31 F. (2d) 188 (D. C. Pa.); New Jersey Zinc Co. v. Singmaster, 4 F. Supp. 967 (D. C.); Standard Plunger El. Co. v. Stokes, 212 F. 893 (C. C. A. 2); Aspinwall Mfg. Co. v. Gill, 32 F. 697 (C. C. N. J.); T. B. Harms, etc., v. Stern, 229 F. 42 (C. C. A. 2); Corpus Juris, Patents, § 376; Federal Law of Contracts, § 272.

[5] Oregon Steam Navigation Co. v. Winsor, 20 Wall. (87 U. S.) 64, 22 L. Ed. 315; Williston on Contracts, § 1659; Prame v. Ferrell, 166 F. 702 (C. C. A. 6); Hill v. Central West Public Service Co., 37 F.(2d) 451 (C. C. A. 5); Edgecomb v. Edmonston, 257 Mass. 12, 153 N. E. 99 (1926); Monongahela Riv-er Cons. Coal & Coke Co. v. Jutte, 210 Pa. 288, 59 A. 1088, 105 Am. St. Rep. 812, 2 Ann. Cas. 951; Smith's Appeal, 113 Pa. 579, 6 A. 251; 117 Am. St. Rep. page 499, note; Wiley v. Baumgardner, 97 Ind. 66, 49 Am. Rep. 427; Tarry v. Johnston, 114 Neb. 496, 208 N. W. 615; Goldsoll v. Goldman, [1914] L. R. 2 Chan. 603; A. B. Dick Co. v. Fuller, 198 F. 404 (D. C. N. Y.); Stanley Co. v. Lagomarsino, 53 F.(2d) 112 (D. C. N. Y.) reversed on other grounds.

Contracts held indivisible. Gibson v. Campbell, 49 N. B. 185 (1922); Consumers' Oil Co. v. Nunnemaker, 142 Ind. 560, 41 N. E. 1048, 51 Am. St. Rep. 193; Emler v. Ferne, 23 Ohio App. 218, 155 N. E. 496 (1926).

and original inventor of the new and useful product or process? Second, Does the evidence show that appellant is acting in good faith in asserting that he was not the original inventor?

Appellant, to make a valid application for a patent, was compelled to make an affidavit in support thereof. 35 USCA § 35, provides,

"The applicant shall make oath that he does verily believe himself to be the original and first inventor or discoverer of the art, machine, manufacture, composition, or improvement, or of the variety of plant, for which he solicits a patent; that he does not know and does not believe that the same was ever before known or used; and shall state of what country he is a citizen. * * * *"

Neither the search of counsel nor of this court has been productive of satisfactory decisions which answer this question. It is clear that applications must be supported by the oath of the applicant. Whether the court can compel the making of such oath is, however, a very different question. In Runstetler v. Atkinson, MacArthur & M. (11 D. C.) page 384 (1883), we find a pertinent dictum as follows:

"A court of equity will * * * specifically enforce such an agreement, by requiring a party to do everything necessary to make it effectual, viz.: to execute a formal assignment and to make the necessary application for the patent."

In Adams v. Messinger, 147 Mass. 185, 17 N. E. 491, 9 Am. St. Rep. 679, the court specifically decreed that an application for letters patent be made in Canada. It does not appear, however, that the Canadian requirements called for a verified application. This court in the case of American Steel Foundries v. Laughlin, 30 F.(2d) 139, 140, said:

"Appellant's position * * * is: That the application for the reissue patent * * * is for the same invention as * * * patent * * * and which appellees assigned to appellant; * * * that the covenant to execute 'any lawful and proper application for reissue' is sufficiently definite and certain to be enforceable in equity. * * *

"In the assignment referred to, appellees agreed 'to join in signing any lawful and proper application for such reissue at the request of said assignee.'

"What are 'lawful and proper' applications for a reissue? * * *

"Whatever may be the exact meaning of 'lawful and proper' application, it cannot be argued that appellees were required to sign an application which obviously would be rejected by the Patent Office. Nor were they required to sign an application which necessitated a verification that could only be made by a false oath."

Turning from patent cases to other fields of litigation for analogy, we find statements to the effect that one cannot be compelled to make a statement under oath. Thatcher v. Darr, 27 Wyo. 452, 199 P. 938, 16 A. L. R. 1442; Crenshaw v. Miller (C. C.) 111 F. 450; Jones, Commentaries on Evidence, § 1900. The giving of a deposition (distinguishing affidavit and deposition) may be the subject of compulsory action. 1 Ruling Case Law, Affidavits, § 2; Crenshaw v. Miller, 111 F. 450 (C. C. A.); 28 USCA § 639 and annotation notes Nos. 27–30.

Notwithstanding these decisions, it seems to us that where the parties have made a valid agreement, the performance of which calls for the signing of a document, be it contract, deed, affidavit, or other instrument, courts of equity may compel the performance of the agreement, which performance may include the making of an affidavit unless the facts set forth in the affidavit are statements which the affiant may legitimately object to making. To illustrate, the verification of a patent calls for a statement of "what country he is a citizen." We see no legitimate reason why in compelling one to fulfil his agreement, he should not be directed to make an affidavit concerning which there is no doubt or controversy such as age, residence, citizenship, etc.

When it comes to making a statement that the affiant is the "original and first inventor of a machine," and the fact is questionable or denied, a wholly different situation is presented.

As stated by the court in American Steel Foundries v. Laughlin, supra, "Nor were they required to sign an application which necessitated a verification that could only be made by a false oath." We think it must be accepted as elementary that a court cannot compel one to make a false affidavit. Nor should the court compel one to sign the verification of a document which contained facts the truth of which affiant disputed or which he honestly and in good faith asserted he did not believe to be true. In fact, we might go further and say that an excuse for not making the affidavit is shown when the affiant in good faith and in an honest belief says he is not able affirmatively to

assert to be true that which is set forth in the affidavit. A positive statement calls for affirmative knowledge. It is not met by an ignorant, unenlightened or uninformed mental state on the part of an affiant.

On the other hand, if the affiant falsely denies what is obviously a fact and stubbornly refuses to sign the affidavit for the sole purpose of avoiding the consequences of his agreement, the court may well direct him to make the verification and, in case of his failure so to do, proceed in the manner usual in such cases.

Our conclusion is, therefore, that the court's power to compel the making of an affidavit turns upon the nature of the averments of the affidavit and the affiant's ability to swear to their truth.

██ In determining whether appellant's refusal to sign the affidavit was traceable to a good faith belief that he was not the original inventor, we find part of opposing counsel's differences arises out of their inability to agree upon what evidence is before the court. On the application for a temporary injunction, affidavits were received which tended to show that appellant was not the "original inventor." Letters were also attached to the affidavits corroborating these statements. On the trial of the case, appellant did not take the witness stand, but his counsel insisted that these affidavits and letters were before the court.

We agree with appellee that such evidence is not part of the record before us. Evans v. Stettnisch, 149 U. S. 605, 13 S. Ct. 931, 37 L. Ed. 866; Stewart v. Wyoming Cattle Ranche Company, 128 U. S. 383, 9 S. Ct. 101, 32 L. Ed. 439.

 Evidence was, however, received to which no such objection can be made, which tended to establish what appellant asserted, viz., that he was not the first and original inventor. The burden of proof on this issue was on the appellee. It was asking the court to compel appellant to make an affidavit. Before it was entitled to this relief, its showing should have included proof that appellant could truthfully make such statement. The proof instead of establishing this fact tended to establish the contrary. Carlton, a vice president in charge of manufacture, testified:

" * * Guth expressed doubt to me that he was the owner of the invention. He expressed doubt at the time he was asked to make this written record of what he had done. * * *

"Guth raised the point that there were certain broad developments in adhesive creping. We had done a good deal of work on it through Mr. Guth, naturally our line of that (thought) was for Mr. Guth to set up the thoughts he had in writing, put those in the form of a patent application, and have the Patent Office * * * decide where the patentability actually lay."

A letter was received in evidence, written by Carlton to McKnight, president of appellee, which said, among other things:

"There are certain things bothering Mr. Guth in this application. He feels that there is a basic application on adhesive creping. This idea was originally passed on to him by Hudson-Sharpe. Hudson-Sharpe are supposed to have a number of patents on creping, and Mr. Guth feels they may have coverage on this one. * * *"

Appellee's affirmative evidence on this issue was well nigh nil.

The evidence is quite conclusive to the effect that appellant, during his employment, went to Green Bay, Wisconsin, to examine some machines manufactured by Hudson-Sharpe Machine Company of that city. Later, a machine was ordered from this company with which Guth continued his experimentation. Guth's contention is that it was at Green Bay, at the Hudson-Sharpe factory, that he first learned of the process and product for which he is asked to file an application for a patent. The evidence is not conclusive that the Green Bay disclosures covered all that is sought in this application or that some one in the Hudson-Sharpe plant was not the inventor or a joint inventor with Guth. The most we can say is that we are left in such doubt and uncertainty as to compel us to conclude that appellant was justified in refusing to swear that he believed he was the first and original inventor. Courts should be the last institution to encourage reckless statements under oath.

The proposed patent application contained twenty claims. After reading them and the other testimony, we are convinced that appellee has failed to meet the burden which lay upon it, of showing appellant's refusal to be capricious or without merit.

██ The relief sought and granted in respect to the second patent was somewhat different from that granted in respect to the first patent. By the decree, appellant was required to disclose to appellee any other inventions which had been made by him relative to abrasives, adhesives, or related materials. If these inventions were made dur-

ing the period of his employment or were improvements on inventions by him made during said employment, appellee was entitled to know about them. It was also entitled to have an assignment of such inventions if the disclosure showed them to be · of the above-described character. It was not, however, entitled, upon the showing made, to a decree compelling appellant to sign an application for United States Patent covering such improvement. There is, in other words, a difference between the right to an assignment of an invention and the right to compel another to apply for a patent on an invention.

Our conclusion is that, upon the showing made, appellant is not required to sign applications for United States Patents on either of the two subject matters referred to in the evidence and pleadings. He is, however, required to make full disclosures of his second discovery and the date thereof, and upon such information the court may grant such relief against appellant as the fact showing warrants; that such relief may include assignment of the discovery or invention, but it does not include the right to compel appellant to apply for the so-called first patent; that its right to compel an application for the second patent must depend upon the showing made as to said discovery.

The decree is reversed with directions to proceed in accordance with the views here expressed. Appellant will recover his costs on this appeal.