Mr. Justice NELSON;
 

 This is an appeal from the Circuit Court of the United States for the District of Columbia.
 

 The bill was filed by the plaintiffs against the defendant, Bacon, to compel him to surrender and cancel letters patent for á new and useful machine for folding paper, granted 10th of August, 1858. Both parties set up a claim to the invention as assignees of John North, the inventor. The assignments to the plaintiffs were made under- the dates of 12th of August, 1858, and 7th July, 1859. The defendant claims under an agreement
 
 *701
 
 made between North and the American Book and Paper Folding Company, dated 6th of February, 1854, and between the same Company and Newell and John North, 2d of May, 1854, and by a subsequent verbal agreement between the defendant and John North sometime in May, 1856.
 

 According to the terms of the two written agreements between ' North and the American Company the former stipulated to engage in the service of the Company, and devote himself to the making of improvements in paper-folding machines for a compensation mentioned; and, further, that all improvements and inventions made or discovered should be the property of the Company; and that he would take all proper steps for the pur-' pose of procuring patents for said improvements. It was furthos stipulated that this agreement may be terminated by North on giving three months’ notice after having served one year, and the Company at any time on giving thirty days’ notice.
 

 This Company, having subsequently resolved to' close theii business, gave a written notice to North on .the 30th of May, 1857, that his services would be no longer required. And, about'the same time, sold, at auction, among other things, their interest in the improvements made by North in paper-folding machines, including a patent issued 15th of April, 1856, to North and' another issued to E. N. Smith, 27th of November, 1849, and reissued 7th of January, 1851, which interests and property were purchased by one' Anson Hardy. And, on the 1st of July, 1856, said Hardy assigned all-his interest in • the property to Bacon the defendant.
 

 The defendant, after his purchase of these machines, made a verbal arrangement with North to enter into his, service and devote himself to making improvements in folding-macl ines upon the same terms and conditions as those under which he had been previously engaged with the Company. This arrangement continued till about the middle of July, 1857, when he left the service of the defendant and engaged in the manufacture of sewing machines. Now, it is claimed, by the defendant; that the inventions or improvements embraced in the papér-folding machine in question were the fruits of the labors of North while
 
 *702
 
 engaged' in his, the defendant’s, service, and when he was entitled to the benefit of his discoveries) or, when he (North) was engaged in the service of the American Paper-folding Company who were entitled to the benefit of these discoveries and which passed to him, the defendant, by assignment. The right, as thus derived, constitutes the title of the defendant to the invention and patent in controversy.
 

 It has already been stated, that, among the property which passed to the defendant from the American Company through Hardy, was the patent to North for a paper-folding machine issued 15th of April, 1856. The labors of North, while in the service of the defendant, were devoted to improvements upon this machine, and it is this machine as improved in July, 1857, when North left the service of tbe defendant, that it is claimed embodied the invention and improvements in question, and for which a patent was issued to the defendant 10th of August, 1858.. The circumstances under which this patent was issued will be stated hereafter. Eor the present, our inquiry is, whether or not North made these discoveries while engaged in the service of the defendant, or in the service of the American Folding Company.
 

 North, who was made a defendant and a party on the record, was called as a witness on the part of the plaintiffs, and very fully examined on both sides. No objection is taken to the competency of his testimony before the officer taking it, nor in the brief in this Court, and we must regard it, therefore, as admitted by consent. This witness, after giving a history of the machine, of its exhibition at the fair of the American Institute in the fall of 1856; and also at Appletons’ bindery, in Franklin street, in the city of New York, in February, 1857, and of some improvements made upon it at that place, states that about the first of June, 1857, he removed the machine to a shop in Middletown, Connecticut, and worked upon it there some six weeks endeavoring to improve it, but with no good results; gave up the effort and went into other business — making sewing machines. This was, about the middle of July, 1857.
 

 The difficulties in the working of the machine while at Apple-
 
 *703
 
 tons’, and at Middletown, were in the adjustment to correspond with the different signatures — the register, also, was imperfect — and a fulness in the sheet which wrinkled it.
 

 This machine was afterwards removed to Colt’s armory in Hartford, Connecticut; and we have the testimony of E. K. Root —a witness for the defendant, and mechanical engineer — who examined it there, and saw it in operation. He was asked — - ■ “ Of the sheets you have seen folded on that machine what proportion were crimped or wrinkled, and to what amount ?" Answer: “ My impression is that about one-half were wrinkled more or less — pretty much all on one side of the machine — so much as to be objectionable.” ■ “To what extent, if at all, would you consider the amount of wrinkling you observed as affecting of itself the practical value of the machine?” Answer: “I should say it would prevent its use on all good book work.”
 

 This testimony is confirmed by two other witnesses, Gavet and Mathews.
 

 The machine to which these witnesses refer and speak of embodied all the improvements ever made upon it by North! Indeed, it is admitted he made none after the middle of July,
 

 1857, and it is quite clear from the evidence that it was an unsuccessful experiment as a practical folding machine, and abandoned by him as such.
 

 In' the spring of 1858, North, at the solicitation of Mathews who had charge of the bindery department of the Appletons, turned his attention tó the invention of a machine that would fold the size of duodecimo sheets, all the previous machines that had been constructed' having been adapted only to the folding of octavo volumes. As five-sixths of the business of book-folding was of the small size the invention was regarded as a great desideratum. This is the machine afterwards produced by North, and for which he applied to the Patent Office for a patent. The necessary papers, model, and certificate of payment of the .patent fee were forwarded to the office 27th of May, 1858. The machine will fold books of both octavo and twelve-mo size with entire success.
 

 The papers and model were filed in the Patent Office 10ih
 
 *704
 
 June, 1858, and the patent issued to S. T. Bacon, the defendant, instead of to John North, the inventor, on the 10th of August following, and this without any provious notice to him. How this happened in' the Commissioner’s office has not been explained. It was a very grave irregularity. The specification on file was in the name of North, the application in his name, and the patent fee paid by him.
 
 We
 
 have seen the defendant, to whom it was issued, had no right to it, legal or -equitable. . The officer must have been imposed upon by the use of the old machine of 1856. which we have seen was but an unsuccessful experiment, and abandoned. The plaintiffs, as assignees of North, have made out a clear right' to the patent, and the decree of the Court below must be reversed .and the cause remitted, with instructions to enter' a decree for the plaintiffs, directing the defendant -to surrender the patent to be cancelled.