### NEW JERSEY ZINC CO. v. SINGMASTER et al.

### No. 429.

Circuit Court of Appeals, Second Circuit.
June 4, 1934.

Hammond & Littell, of New York City (Frank S. Busser, of Philadelphia, Pa., George P. Dike, of Boston, Mass., and Nelson Littell, of New York City, of counsel), for appellant Singmaster.

Wing, Lakin & Whedon, of New York City (Thomas E. Wing and Burt D. Whedon, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The appellant, Singmaster, employed by the appellee from 1900 to April 30, 1927, had granted to him, on August 20, 1929, patent No. 1,725,742 for artificial silk filament and the method of making the same. He also had granted to him British patent No. 342,743, application filed August 9, 1929, granted February 9, 1931, for an improvement in the manufacture of artificial silk filament; British patent No. 339,603, applied for August 9, 1929, granted December 9, 1930; United States patent No. 1,875,894, applied for May 8, 1929, granted September 6, 1932, for artificial silk filament and method of making the same. After April 30, 1927, he was engaged by the Tubize Chatillon Corporation, one of the defendants. It was during the period he was rendering services for the Tubize Corporation that all of the patents were granted to the appellant.

The suit is for specific performance of a contract alleged to exist between the appellant and appellee, whereby the appellant agreed to assign to it all patented ideas and devices originating with or developed by him while an employee of the appellee. This contractual obligation is imposed, appellee says, because in January, 1912, while appellant was employed by the appellee, the latter issued general instructions relating to patents as follows:

"In order to definitely define the method of handling patents on all devices and ideas originating with, or developed by employees of the New Jersey Company or its subsidiary companies, the following instruction has been formulated to take effect immediately.

"*Ownership*. All patentable ideas and devices originating with, or developed by, an employee of this Company, while in the employ of the Company, shall belong to the Company, and shall be formally assigned to the Company by the patentee.

"*Taking out Patents*. All patentable ideas and devices shall be referred to the General Manager of this Company who will submit them to the Operating Committee for decision as to whether a patent shall be applied for or not."

The instructions also provided that, if it was decided to apply for a patent, the application should be accompanied by a formal assignment to the company of all the rights, and the company would bear the expense of taking out the patent.

At this time the appellant was superintendent of one of appellee's plants. These instructions, known as general instruction No. 4, remained in effect without change until March 22, 1922, when they were replaced by instruction No. 4 (a), which were identical with No. 4, but provided that all patentable

ideas and devices should be referred to the general manager of the technical department. While none of the patents was actually issued to him or indeed applied for while he was in the employ of the appellee, still it is claimed that it was while so employed that he obtained these patentable ideas. During his period of employment with the appellee he assigned twenty-one patents issued upon patentable ideas originating with him and co-inventors. Thus it is properly argued that he understood the purport of these instructions and assented to the obligation to assign patentable inventions to the company. Magnetic Mfg. Co. v. Dings Magnetic Separator Co., 16 F.(2d) 739 (C. C. A. 7).

The application for the first patent, No. 1,725,742, issued August 20, 1929, gave rise to an interference proceeding in the Patent Office, and the appellant in an affidavit filed there stated that he conceived the invention July 1, 1926, and disclosed it to others in September, 1926; he also stated that his first written description of the invention was on November 6, 1926, and further disclosure was made May 7, 1927, and May 10, 1927. Appellant offered his resignation April 3, 1927, to be effective May 1, 1927. Thus he conceived his invention ten months before he left appellee's employ. Under his contract of employment, this patent was the appellee's, and the court below correctly required its assignment to the appellee. Magnetic Mfg. Co. v. Dings Magnetic Separator Co., supra. Merely waiting until after his resignation became effective before applying for his patent and thereafter receiving the grant does not excuse the appellant from assigning to the appellee that which he conceived and labored upon, as he states, while in its employ. Thompson v. Automatic Fire Protection Co., 211 F. 120 (C. C. A. 2). It is true that appellant testified that his invention was conceived May 7, 1927, a week after he left appellee's employ, and this he says was during a conversation he had with the president of the Tubize Corporation, but it is sufficiently established, as the trial court found, that his conception of the invention was at the earlier date and we agree with that finding.

The later American and British patents are for improvements upon the basic patent. They were applied for and granted while the appellant was associated with the Tubize Corporation. Titanium dioxide was more efficient than any other pigment in the opacifying and delustering of artificial silk, and in as much as any pigments added to artificial silk weakens the fibre, it is important to use as small a quantity as possible to get the desired opacity and delustering effect with the minimum sacrificing of strength. It was more than two years after the appellant resigned from the appellee corporation's service that he filed the application for the American patent which mentions titanium dioxide. He says it was first reduced to practice in January, 1928, and his first written description of the invention was in June, 1928. It was the experimental facilities available to him after he left the appellee's employ that enabled him to discover that titanium dioxide would be more efficient for this purpose than any other pigment. The file history of the prosecution of this application shows that during the course of the prosecution it was necessary to overcome a reference cited by the Patent Office. His affidavit in that proceeding shows that this invention was neither conceived nor reduced to practice during the period of his employment with the appellee.

There should be no confusion between the right of the owner of a dominating patent to prevent infringement thereof by improvement patents and the right of the improver to his improvements and his right to prevent infringement of the improvement patents by the owner of the dominating patent. The improvements, the second United States patent and the two British patents, may not be obtained by assignment to the appellee because of appellant's prior contractual obligation, for these improvements are not shown to have been made or discovered while the appellant was in the appellee's employ. The patents are separable. They are independent inventions. Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U. S. 301, 319, 29 S. Ct. 495, 53 L. Ed. 805; Smith v. Nichols, 21 Wall. (88 U. S.) 112, 118, 22 L. Ed. 566. The prior patentee cannot use the improvement without the consent of the improver, and the latter cannot use the original invention without the consent of the former. Smith v. Nichols, supra. The law recognizes the validity of both patents, where the second is an improvement of the first, and neither of the two patentees can lawfully use the invention of the other without the other's consent. Cantrell v. Wallick, 117 U. S. 689, 6 S. Ct. 970, 29 L. Ed. 1017; Appleton v. Bacon & North, 2 Black (67 U. S.) 699, 17 L. Ed. 338. An employee is not forbidden, after leaving the service of his employer, from giving expression to inventive thoughts and ideas and indeed making improvements upon basic patents which have become the property

280

of his former employer. Exercise of talents resulting in invention after termination of the employer-employee relationship entitles the employee to a grant of a patent and patent protection.

 The appellee moved to dismiss this appeal, contending that a settlement had been made with the Tubize Corporation, the other defendant in the suit, and that the appellant has no interest in the decree appealed from and the court is without jurisdiction. Its argument is that the absence of the Tubize Corporation as a party to this appeal, when there have been neither summons severance nor service of notice of appeal on that defendant ousts the court of jurisdiction. It also argues that, because of the settlement, there is no longer a justiciable controversy. Singmaster filed a separate appeal in advance of an accounting audit. The settlement was made prior to the entry of a final decree. The rule of summons and severance was stated in Winters v. United States, 207 U. S. 564, 574, 28 S. Ct. 207, 210, 52 L. Ed. 340, as follows:

"The rule which requires the parties to a judgment or decree to join in an appeal or writ of error, or be detached from the right by some proper proceeding, or by their renunciation, is firmly established. But the rule only applies to joint judgments or decrees. In other words, when the interest of a defendant is separate from that of other defendants he may appeal without them."

In the settlement made by the Tubize Corporation, that party renounced its right to appeal. The renunciation of the right to appeal dispenses with the necessity for summons and severance as to it.

Moreover, the rule of summons and severance applies only to joint decrees. The decree in this case is several. It directs appellant Singmaster to assign his entire right, title, and interest in the patents in suit, including his interest by way of royalty under his contract with the Tubize Corporation. It also refers the matter to a master to ascertain the gains, profits, and advantages which had accrued to either of the defendants. It thus appears that the appellant had an interest apart from the Tubize Corporation and was entitled to protect his rights. Masterson v. Herndon, 10 Wall. 416, 19 L. Ed. 953; Prince v. McLaughlin, 16 F.(2d) 886 (C. C. A. 1); Richards v. American Bank of Alaska, 234 F. 300 (C. C. A. 9).

In Babcock v. Norton, 5 F.(2d) 153 (C. C. A. 2), to which we are referred, the decree was final and awarded a money judgment jointly against the defendants. In American Baptist Home Mission Society v. Barnett, 26 F.(2d) 350 (C. C. A. 2), the defendants were jointly required to deliver over certain bonds.

The application to dismiss the appeal for want of jurisdiction is denied. The decree below will be modified, with the direction to appellant to assign to appellee patent No. 1,-725,742 only.

Decree modified, without costs.